UNITED STATES of America, Plaintiff-Appellee,

v.

John Empie EMERY, Defendant-Appellant.

No. 77–2650.

United States Court of Appeals, Ninth Circuit.

Oct. 10, 1978.

---

David Hamilton (argued), Reno, Nev., for defendant-appellant.

Leland Luffy, Asst. U. S. Atty. (argued), Reno, Nev., for plaintiff-appellee.

Before SNEED and TANG, Circuit Judges, and INGRAM,* District Judge.

TANG, Circuit Judge:

Appellant Emery appeals from a conviction of conspiracy to import marijuana in violation of 21 U.S.C. § 963. Emery makes two assignments of error. The first is that statements he made while in the custody of Mexican police were improperly admitted because he had not been given *Miranda* warnings before he made the statements.

The second contention is that testimony of a government witness should have been suppressed because the government did not comply with its discovery representations.

Drug Enforcement Agency (D.E.A.) Agent Ramirez, acting on a call from the Reno office of the D.E.A. alerted the Mexican police that a drug transaction was possible in the Guaymas area. Agent Ramirez coordinated the surveillance of the Guaymas, Mexico Airport with the Mexican police. Agent Ramirez and the Mexican police were present when D.E.A. undercover Agent Johns, piloting a rented airplane landed at the airport. Agent Johns had been hired by one of the co-conspirators to fly the airplane to Guaymas. The plane was met by Weber, one of the co-conspirators. Weber left and later returned with Emery. Each carried suitcases containing marijuana.

Agent Johns asked Weber and Emery where the marijuana was as he needed to know how to load the airplane. Weber replied that he had half and Emery stated he had the other half. As they approached the plane, Agent Johns gave a prearranged signal to the surveilling D.E.A. Agents and the Mexican police which resulted in the arrest of Emery, Weber and Agent Johns by the Mexican police.

Both Emery and Weber were searched and interrogated by the Mexican police with Agent Ramirez observing. Emery did not make a statement at that time, but later after being transported to Hermosillo by helicopter Emery stated that his job was to get the drugs and that it was Weber's job to transport the drugs out of Mexico and sell it. At no time was Emery advised of his *Miranda* rights.

Failure of the Mexican authorities to comply with the requirements of *Miranda* is not chargeable to the United States authorities absent a showing of a joint venture between the United States and Mexican authorities. *United States v. Trenary*, 473 F.2d 680 (9th Cir. 1973). The rationale for excluding confessions is not present where United States agents do not actively participate in the arrest and interrogation as this court pointed out in *United States v. Chavarria*, 443 F.2d 904 (9th Cir. 1971), where we said:

> *Miranda* was intended as a deterrent to unlawful police interrogations. When the interrogation is by the authorities of a foreign jurisdiction, the exclusionary rule has little or no effect upon the conduct of foreign police. Therefor, so long as the trustworthiness of the confession satisfies legal standards, the fact that the defendant was not given *Miranda* warnings before questioning by foreign police will not, by itself, render his confession inadmissible (citations omitted). 443 F.2d at 905.

---

* Honorable William A. Ingram, United States Judge for the Northern District of California sitting by designation.

Here, however, we find that a joint venture existed between the United States and Mexican authorities. The participation of the D.E.A. agents in this case is greater than in *Trenary*, where the agent merely acted as an interpreter.

The D.E.A. in this instance substantially participated in the entire arrest. D.E.A. agents alerted the Mexican police of the possible activity, coordinated the surveillance at the Guaymas airport, supplied the pilot for the plane and gave the signal that instigated the arrest once it was determined that the marijuana was in the suitcase.

In circumstances such as these the rationale of *Chavarria* is inapplicable. The constitutional safeguards of *Miranda* should not be circumvented merely because the interrogation was conducted by foreign officials in a foreign county.

Because of the joint venture between the Mexican and American officials, the statements made during the interrogation and in the presence of the D.E.A. agents should have been suppressed. The conviction must be reversed for this reason.

Emery had moved pursuant to Fed.R. Crim.P. 16 for discovery of all statements alleged to have been made by the defendant. The government maintained an "open file policy" and represented that they would voluntarily furnish Emery with the information. As a result, the district court judge never made a formal order regarding discovery.

Defense counsel reviewed the file on May 2, 1977. A report written by D.E.A. Agent Johns which contained statements made by Emery at the time of arrest and dated May 2, 1977 was added after defense counsel had reviewed the file. This report was not shown to defense counsel until after the prosecution had completed the direct examination of the agent at trial.

A second report was also not disclosed to the defense. The prosecution had requested another D.E.A. agent to reconstruct Emery's statements at the time of the arrest. This reconstruction was prepared after the suppression hearing, so was not in the file when the defense counsel looked through it. The report was first made available to the defense during the first day of trial.

The district court, in denying the subsequent motion to suppress the two statements, specifically found that the prosecution had not intentionally violated the announced "open file policy" on discovery. While the non-disclosure of the two reports may not have been sufficiently prejudicial under the facts of this case to require reversal, we are nevertheless troubled by the potential difficulties and possible abuse that can result from similar circumstances. It would be preferable if prosecutors with open file policies would devise some procedure whereby defense counsel would have access to the file prior to trial and examination of the file noted in the record. This would avoid the necessity of the prosecutor having to inform defendant of any additions to the file.

REVERSED AND REMANDED.