**George Jerome PFEIFER, Petitioner/Appellant,**

v.

**UNITED STATES BUREAU OF PRISONS, Respondent/Appellee.**

**No. 79–2536.**

United States Court of Appeals, Ninth Circuit.

March 26, 1980.

Jeffrey K. Jayson, La Jolla, Cal., for petitioner-appellant.

Earl Kaplan, Atty., Dept. of Justice, Crim.Div., Washington, D.C., for respondent-appellee.

Before GOODWIN, WALLACE and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

George Jerome Pfeifer appeals the denial of his petition for a writ of habeas corpus. He contends that his imprisonment in the United States, pursuant to the Treaty on the Execution of Penal Sentences between the United States and Mexico,[1] violates his right to due process. We affirm.

Pfeifer was arrested in the Mexico City airport on September 19, 1977. Mexican officials found what appeared to be cocaine in his suitcase and three apparently counterfeit $100 bills on his person. On March 31, 1978 he was found guilty in a Mexican court of importing cocaine and of possessing counterfeit money. He was sentenced to twelve years in prison. Pfeifer alleges that he was made to sign a confession by torture, that he was denied effective assistance of counsel, and that he was denied the right to appeal.

At a hearing in Tijuana, Mexico on May 12, 1978 before a United States magistrate, Pfeifer consented to be transferred to the custody of the United States to serve his Mexican sentence in accordance with the provisions of the Treaty. He was transferred to the United States and on June 2, 1978 he filed this petition for habeas corpus.

Pfeifer contends that those portions of the Treaty and its implementing legislation[2] that deny transferred prisoners the right to challenge the constitutionality of their foreign convictions in United States courts are unconstitutional. He argues that his conviction was obtained in violation of

---

1. Treaty on the Execution of Penal Sentences, November 25, 1976, United States-Mexico, 28 U.S.T. 7399, T.I.A.S. No. 8718.

2. Act of Oct. 28, 1977, Pub.L.No. 95–144, 91 Stat. 1212 (codified at 10 U.S.C. § 955; 18 U.S.C. §§ 3244, 4100–4115).

his due process rights and that he should therefore be released from custody. Alternatively, he contends that, even if the Treaty is constitutional, the provisions of the Treaty were not met in his case because his consent to be transferred was not voluntarily and knowingly given.

We understand but reject Pfeifer's arguments. The Treaty does not create new rights which enable a foreign convict to have a review of an otherwise final foreign judgment. Its sole purpose is to permit persons convicted in foreign countries to serve their incarcerations in the country of which they are citizens. We recognize that the procedures followed in some foreign countries may not meet our constitutional standards. That fact, however, does not render the challenged portions of the Treaty unconstitutional, nor does the fact that we will not recognize a foreign penal judgment which was obtained in a manner that does not comport with due process. Our concern here is the constitutionality of the challenged portions of the Treaty. The constitutionality of the conviction which led to the foreign incarceration is not before us.

The district court held that the United States Constitution has no relation to the validity of Pfeifer's foreign conviction for a foreign crime, relying on *Neely v. Henkel*, 180 U.S. 109, 21 S.Ct. 302, 45 L.Ed. 448 (1901) and *Holmes v. Laird*, 148 U.S.App. D.C. 187, 459 F.2d 1211 (D.C.Cir.), *cert. denied*, 409 U.S. 869, 93 S.Ct. 197, 34 L.Ed.2d 120 (1972). We do not reach that question because the Treaty and its implementing legislation provide that, prior to transfer, an offender must first consent to the conditions of the Treaty. This consent constitutes a waiver of, or at least an agreement not to assert, any constitutional rights the offender might have regarding his or her conviction. The issue is whether this consent is obtained in a manner that meets the constitutional tests for a valid waiver.

A valid waiver of constitutional rights must be voluntarily and knowingly made. *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). The accused must have access to competent counsel. *See Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). The validity of the waiver should be determined by a court and an affirmative showing that the waiver was intelligent and voluntary must appear in the record. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

The statute implementing the Treaty provides that a United States magistrate shall verify, at a hearing held in the transferring country, that the offender consents to the transfer voluntarily and with full knowledge of the consequences. 18 U.S.C. § 4108. It provides that the offender be advised of his or her right to counsel, that certain specific questions be asked concerning the consequences of transferring, and that a record be made of the verification proceedings. *Id.* Counsel will be appointed for an offender who is financially unable to obtain his or her own. 18 U.S.C. § 4109. An offender's consent to be transferred pursuant to the Treaty is a constitutionally valid waiver of any constitutional rights he or she might have regarding his or her conviction.

Further, the requirement that an offender agree not to challenge his or her conviction in a United States court is not an unconstitutional condition. A constitutional question arises when a party is required to relinquish a *vested* right as a condition for obtaining a benefit. *See United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968); *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *Smartt v. Avery*, 370 F.2d 788 (6th Cir. 1967). Americans who are incarcerated in Mexican prisons, however, have no right to relief from United States courts. Those who accept the opportunity presented by the Treaty lose nothing by consenting to limit themselves solely to Mexican remedies after the transfer. *See Note, Constitutional Problems in the Execution of Foreign Penal Sentences: The Mexican-American Prisoner Transfer Treaty*, 90 Harv.L.Rev. 1500, 1524–25 (1977). In cases concerning conditional presidential pardons, where the offenders also lose no vested rights in ac-

cepting the conditional benefit, the conditions imposed have been upheld. *See Schick v. Reed,* 419 U.S. 256, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974); *Hoffa v. Saxbe,* 378 F.Supp. 1221 (D.D.C.1974). *Cf. Birzon v. King,* 469 F.2d 1241 (2d Cir. 1972) (parole conditions upheld).

Pfeifer contends that a waiver under the Treaty·cannot be valid because the duress caused by the brutal conditions of Mexican prisons denies the transferring prisoner any real choice. He cites *United States v. Jackson, supra.* There the Court held that the death penalty clause of the Federal Kidnapping Act was unconstitutional because it provided that the death penalty could be awarded only if recommended in the jury's verdict. This provision needlessly encouraged defendants to waive their rights to jury trials. Crucial to the Court's holding was its finding that the statute's purpose could be accomplished in a way that did not encourage a waiver of constitutional rights. *See Corbitt v. New Jersey,* 439 U.S. 212, 219 n. 9, 99 S.Ct. 492, 497 n. 9, 58 L.Ed.2d 466 (1978). The same cannot be said about the Treaty and its implementing statute. The reasoning of *Jackson* therefore does not apply.

Pfeifer's contentions that his consent was not voluntarily and knowingly given were carefully reviewed by the district judge who addressed them fully in his order. *Pfeifer v. United States Bureau of Prisons,* 468 F.Supp. 920, 924–26 (S.D.Cal. 1979). He concluded that the record did not support Pfeifer's allegations. We agree.

Because Pfeifer has waived any right he may have to challenge the validity of his Mexican conviction in a United States court, his contention that he has such a right under the joint venture doctrine is inapposite. In any event, the joint venture doctrine would not apply to these facts. Under the joint venture doctrine, evidence obtained through activities of foreign officials, in which federal agents substantially

participated and which violated the accused's Fifth Amendment or *Miranda* rights, must be suppressed in a subsequent trial in the United States. *United States v. Emery,* 591 F.2d 1266 (9th Cir. 1978); *Stonehill v. United States,* 405 F.2d 738 (9th Cir. 1968), *cert. denied,* 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969). Even if proof of a joint venture would make the United States Constitution applicable to Pfeifer's foreign trial and conviction, such proof is lacking here. Pfeifer argues that because the place of punishment is part of the sentence and therefore part of the judgment, the United States "participated" in his Mexican conviction by allowing the sentence to be carried out in the United States. He also argues that the United States "participated" because the Treaty encourages Mexico to arrest United States citizens who violate its laws. These types of "participation" are insufficient to invoke the joint venture doctrine. *See Stonehill v. United States, supra; Brulay v. United States,* 383 F.2d 345 (9th Cir.), *cert. denied,* 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 478 (1967). Pfeifer also argues that the doctrine applies because "an American DEA agent" who had a pistol visible under his jacket was present in the room where. Pfeifer was interrogated by Mexican officials.[3] We agree with the district court that this fact alone does not constitute substantial participation by a federal agent in the activities of Mexican officials leading to Pfeifer's conviction.

> There is no evidence the "American" present at Pfeifer's interrogation instigated the questioning or took any part in it, . . . nor does Pfeifer allege any American participation in his arrest or trial.

*Pfeifer v. United States Bureau of Prisons, supra* at 924.

Affirmed.

---

**3.** In his briefs on appeal Pfeifer alleged for the first time that the agent participated in his interrogation. However, this court cannot consider facts not alleged to the district court. In his affidavit filed with the district court, Pfeifer stated that a Mexican official had questioned him and the American was merely present.