**Eduardo ALVARADO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–90–00158–CR.**

Court of Appeals of Texas, El Paso.

Feb. 27, 1991.

Bruce J. Ponder, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for appellee.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

FULLER, Justice.

This is an appeal from a conviction arising out of the consolidated trial of two indictments charging Appellant with murder and attempted murder. The jury found the Appellant guilty of the lesser offenses of voluntary manslaughter and attempted voluntary manslaughter. In each case, the court assessed punishment, enhanced by two prior felony convictions, at imprisonment for forty years. We affirm.

Appellant presents a single point of error challenging the admissibility of his written confession as violative of the Fifth and Fourteenth Amendments to the United States Constitution, Article I, §§ 10 and 19 of the Texas Constitution, and Tex.Code Crim.Pro.Ann. arts. 38.22 and 38.23 (Vernon 1979 and Supp.1991).

Appellant was arrested by Mexican State Judicial Police in Juarez, Mexico, at the instigation of the El Paso Police Department. After an initial interrogation by State Judicial Police, including Chief Jose Rubalcaba, he was turned over to Andreas Medina, secretary to the Judicial Police, for the transcription of a written confession, upon information elicited by Medina's questions. Appellant, a United States citizen, and the written confession were turned over to the Director of Mexican Immigration for his decision as to deportation. Appellant was then taken to the border by Mexican immigration personnel who turned him over to American immigration officers. They in turn delivered him into the custody of the El Paso Police Department. Chief Rubalcaba arranged for delivery of a copy of Appellant's confession to the El Paso police.

There was no contention in the lower court that the confession was extracted by any force or coercion which would violate common law standards of voluntariness. Secretary Medina testified that Appellant was advised of his rights under the Code of Criminal Procedure of the State of Chihuahua, Mexico, and that he voluntarily gave the statement. We note Appellant's objection in the trial court to the manner of proof concerning the laws of the Republic of Mexico in this regard. Only the explanatory testimony of Secretary Medina was offered. The rules governing the taking of confessions in Mexico relate directly to Medina's function for the Judicial Police for over twenty years. He testified that he has remained familiar with those rules and is called upon regularly to implement them. While the more formal procedure of Tex.R. Crim.Evid. 203 was not followed, that rule does permit the trial judge to consider "any material or source, whether or not submitted by a party or admissible under the rules of evidence, including but not limited to affidavits, testimony, briefs and treatises." The issue before the trial court involved preliminary questions of fact under Tex.R.Crim.Evid. 104, concerning the admissibility of the confession. Tex.R.Crim. Evid. 1101(c)(1) provides that the rules of evidence do not apply in that circumstance. We consider Medina's explanation a proper basis for consideration of the Mexican rules by the trial judge.

Medina explained that Appellant had and was warned of his right not to give a statement and his right to terminate any statement at any time. He was also advised of his right to the presence and assistance of either a retained attorney or any other individual "in his confidence." Unlike Appellant's rights in this country, Appellant had no right to appointed counsel at the time of his appearance and interrogation by Judicial Police personnel. That right would attach only upon referral to a trial court. Medina made no reference to rights or warnings as to possible use of the confession in later trial proceedings. Obviously, the rights and warnings provided to Appellant by Mexican law do not comport with the applicable rights and warnings under United States and Texas authority in the case of a confession elicited in this state by law enforcement personnel. The question presented by this appeal is the extent to which these latter legal requirements govern the confession taken from Appellant in Mexico and the applicability of judicial and statutory exclusionary rules.

Appellant first contends that Chief Rubalcaba and the Chihuahua State Judicial

Police were acting as agents for the El Paso Police Department and were therefore bound by all the confession rules which apply under federal and Texas law. *Zani v. State*, 679 S.W.2d 144, 151 (Tex. App.—Texarkana 1984), rev'd on other grounds, 758 S.W.2d 233 (Tex.Crim.App. 1988); *United States v. Morrow*, 537 F.2d 120, 139 (5th Cir.1976). We acknowledge this agency principle and its applicability in Fourth and Fifth Amendment situations, involving private citizens or foreign law enforcement personnel. See *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *United States v. Chavarria*, 443 F.2d 904 (9th Cir.1971); *People v. McKinnon*, 7 Cal.3d 899, 103 Cal.Rptr. 897, 500 P.2d 1097 (1972), cert. denied, 411 U.S. 931, 93 S.Ct. 1891, 36 L.Ed.2d 390 (1973). The record before us enables the Appellant to present a strong argument that such agency relationship existed and applied to this confession, but not so strong as to demonstrate that the trial court's ruling was erroneous as a matter of law or constituted an abuse of discretion.

There is no question that information concerning the alleged offenses by Appellant and his suspected presence in Juarez as well as a request for assistance by the El Paso Police Department to Chief Rubalcaba was a cause in fact of Appellant's apprehension by the Chihuahua State Judicial Police. Standing alone this does not create an agency relationship. *United States v. Morrow*, 537 F.2d at 140; *United States v. Chavarria*. American law enforcement personnel were not present and did not participate in the arrest, interrogation, confession or deportation. They did not request the interrogation or taking of a confession. Compare *United States v. Emery*, 591 F.2d 1266 (9th Cir.1978). In this case, according to Rubalcaba, they were not even aware of the apprehension and confession until after these events had occurred.

The critical inquiry in this case must focus upon what Chief Rubalcaba described as a preexisting or on-going cooperative arrangement between the Mexican authorities and the El Paso law enforcement agency. A preexisting arrangement or agreement, no longer requiring case-specific instructions, may be sufficient to establish an agency relationship. *People v. McKinnon.* In order to determine the applicability of the agency concept as urged by Appellant, however, it is essential to analyze the arrangement with the El Paso Police Department in the context of the purely sovereign Mexican procedure which would have otherwise obtained in Appellant's case.

The Mexican police action was triggered by the El Paso police information and request for assistance. Chief Rubalcaba acknowledged that once Appellant's United States citizenship was established, the issue was one of deportation. No Mexican charges or trial proceedings were contemplated. The confession was not intended for use in any Mexican proceedings, and Rubalcaba intended to and did provide for delivery of a copy to the El Paso Police Department, recognizing its probable use at a trial in this state. Rubalcaba testified that he considered this handling of the confession to be within the parameters of his on-going cooperative arrangement with the El Paso police. Rubalcaba testified that despite the intervening involvement of immigration personnel from both countries he realized full well that Appellant would ultimately be delivered into the hands of the El Paso police.

On the other hand, Rubalcaba also described the procedures which would apply in any case in which he or his personnel were alerted from any source to the presence of an accused foreign murderer in his jurisdiction, absent any request for assistance or cooperative agreement with any American law enforcement agency. Chief Rubalcaba noted his own independent responsibility for the safety and welfare of his community with regard to the presence of an allegedly violent criminal. Acting upon such information from any source, the Judicial Police would apprehend the subject and assess several factors: the subject's citizenship, the nature of the alleged offense, the evident validity of the charge, and the national situs of the offense. Vol-

672

untary statements are taken in every apprehension. In the case of a United States citizen accused of an offense in the United States, the matter is referred to the Chief of the Mexican Immigration Service for a discretionary decision on deportation. Statements obtained from such detainees are submitted to the Immigration Service for consideration in determining the propriety of deportation. If deportation is ordered, it is carried out by the Immigration Service, delivering the detainee to American immigration personnel at the border. The Judicial Police are not involved in that process.

Based on the testimony presented, the trial judge could have concluded properly that the procedure by which Appellant was arrested and his confession taken would have occurred in the exact same manner regardless of any express or preexisting arrangement between the Mexican and American law enforcement agencies. Any satisfaction of that inter-agency agreement was incidental to and a mere by-product of an otherwise routine, sovereign police action by the Mexican authorities. Given this independent, albeit concurrent, basis for the arrest and production of the challenged confession, the deterrent effect intended by the various federal and state exclusionary rules would not be served by the suppression of this Appellant's confession. *United States v. Chavarria.* See also *United States v. Heller,* 625 F.2d 594, 599–600 (5th Cir.1980); *United States v. Welch,* 455 F.2d 211, 213 (2d Cir.1972); *United States v. Nagelberg,* 434 F.2d 585, 587 n. 1 (2d Cir.1970), cert. denied, 401 U.S. 939, 91 S.Ct. 935, 28 L.Ed.2d 219 (1971).

■ As a secondary argument, Appellant asserts that the judicial exception to enforcement of the exclusionary rule when no deterrent effect is to be achieved cannot be applied to the Texas statutory exclusionary rules of Articles 38.22 and 38.23 of the Code of Criminal Procedure. See *Oliver v. State,* 711 S.W.2d 442 (Tex.App.—Fort Worth 1986), on rehearing, 716 S.W.2d 742 (Tex.App.—Fort Worth 1986, PDRR). We reject this argument on the basis of the analyses in *Dees v. State,* 722 S.W.2d 209,

213–214 (Tex.App.—Corpus Christi 1986, PDRR), *Bell v. State,* 724 S.W.2d 780 (Tex. Crim.App.1986) and *Self v. State,* 709 S.W.2d 662 (Tex.Crim.App.1986).

Point of Error No. One is overruled.

The judgment is hereby affirmed.