The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Carl D. ROSA, Defendant–Appellant.

No. 94CA0599.

Colorado Court of Appeals, Div. III.

May 16, 1996.

Rehearing Denied June 27, 1996.

Certiorari Denied Dec. 16, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, John J. Krause, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, Carl D. Rosa, appeals from a judgment of conviction entered on jury verdicts finding him guilty of theft, attempted theft, and criminal impersonation. We affirm and remand with instructions to correct the mittimus.

Defendant's convictions arose from the theft of a ring from a Colorado Springs jeweler and the attempted theft of a ring from another Colorado Springs jeweler.

On April 1, 1992, defendant purchased a cubic zirconia ring that met his detailed specifications, paying $200 for it.

On April 2, 1992, a man switched a cubic zirconia ring with a similar appearing diamond ring that had a list price of $15,000. Following discovery of the switch, the store manager alerted a nearby jewelry store that a person matching defendant's description might be switching rings.

On May 3, 1992, a man and woman entered the second store ostensibly looking for a large engagement ring. A sales clerk testified that the man acted suspiciously while he held a one carat diamond ring. When the man returned the ring to the clerk, the clerk examined it and concluded that it was not the same ring she had handed him. When the clerk accused the man of switching rings, the man demanded to see the diamond ring again. When he returned the ring a second time, it was the original one carat diamond ring.

The manager at the first store and the clerk at the second store later identified defendant through a photographic array as the person involved in the theft and attempted theft.

Defendant, a senior airman at Cheyenne Mountain Air Force Base, was charged, *inter alia*, with one count of theft over $10,000, one count of attempted theft over $10,000, and one count of criminal impersonation. After he was charged, he was denied access to the air force base.

After a period of several months, defendant's belongings were removed from his desk and work station and stored in a box to make room for another person. One of his supervisors, while looking for a document

amongst defendant's belongings, later discovered a notebook belonging to defendant which listed the address of a jeweler, a drawing of a price tag for a diamond ring, and the name of a clerk at the jewelry store where the first theft occurred. The supervisor showed the notebook to an officer investigating the matter for the Air Force who, in turn, delivered the notebook to the Colorado Springs investigating officers.

Defendant moved unsuccessfully to suppress the notebook. The trial court held that defendant had no reasonable expectation of privacy in the area where the supervisor discovered the notebook and that the supervisor was acting as a private person and not at the behest of law enforcement officials.

Defendant also moved to sever the counts and hold separate trials on the theft charge related to the first store and the attempted theft and criminal impersonation charges related to the second store. The court also denied this motion.

## I.

Defendant first contends that the trial court erred in not suppressing the notebook found at the air force base. We disagree with defendant's contention.

■ A defendant must demonstrate a legitimate expectation of privacy in the area searched to have standing to challenge the constitutionality of that search. *People v. Juarez*, 770 P.2d 1286 (Colo.1989). In addition, the court must determine whether the defendant's subjective expectation of privacy is one that society would recognize as reasonable. *Hoffman v. People*, 780 P.2d 471 (Colo. 1989).

■ Generally, government employees, including those in the military, have reasonable expectations of privacy in their offices and workplaces. *O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987); *United States v. Battles*, 25 M.J. 58 (C.M.A.1987); *see also City & County of Denver v. Casados*, 862 P.2d 908 (Colo.1993),

cert. denied, —— U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994). However, that expectation of privacy may be limited:

> Public employees' expectations of privacy in their offices, desks, and file cabinets, like similar expectations of employees in the private sector, may be reduced by virtue of actual office practices and procedures, or by legitimate regulation.... [I]n many cases offices are continually entered by fellow employees and other visitors during the workday for conferences, consultations, and other work-related visits. Simply put, it is the nature of government offices that others—such as fellow employees, supervisors, consensual visitors, and the general public—may have frequent access to an individual's office.... [S]ome government offices may be so open to fellow employees or the public that no expectation of privacy is reasonable.

*O'Connor v. Ortega, supra,* 480 U.S. at 717–18, 107 S.Ct. at 1497–98, 94 L.Ed.2d at 723.

■ Here, we agree with the trial court's determination that defendant had no reasonable expectation of privacy in the area where the supervisor found the notebook. The supervisor, who was the only witness at the suppression hearing, testified that defendant worked in an open area where desks were next to each other. Personnel had access to other people's work areas. Each person was given a separate lock and key for his or her desk, but would commonly give the key to another person in case he or she was to be absent for an extended time. The supervisor also testified that people in the building and on the base were subject to search at all times.

After defendant had been denied access to the air force base, his work area was reassigned, and his belongings were stored and locked in a storage area. The supervisor testified that he removed the notebook from storage when he was looking for information on social activities that defendant had helped organize. While looking through the notebook, he found the address of a jeweler, a

drawing of a price tag for a diamond ring, and a store clerk's name.

Under these circumstances, we conclude, as did the trial court, that defendant had no reasonable expectation of privacy. In addition, under military law, persons in the area were subject to search. *See United States v. Muniz*, 23 M.J. 201 (C.M.A.1987) (desk under military command subject to search at a moment's notice). Therefore, the trial court did not err in declining to suppress the notebook as evidence.

Having determined that defendant had no reasonable expectation of privacy in the area searched, we need not address his other contention that the supervisor acted at the behest of police.

## II.

Defendant next argues that the court committed reversible error when it told him that he would be subject to cross-examination on other issues if he testified at the suppression hearing. We conclude that any error was harmless as a matter of law.

Here, before defendant was to testify at the suppression hearing, the following exchange occurred between the court and defendant.

Q: Now, also if you testify in this proceeding, you're testifying under oath. That's called former testimony when you come to trial if you decide to testify at trial, do you understand that? In other words, you'll have prior testimony under oath by the time you decide to take the stand in the trial if you want to, this will become former testimony, this hearing here today?

A: Yes, sir.

Q: What that means is that if you take the stand—

A: Yes, sir.

Q: If you take the stand and you testify differently in the trial than you did today, then the testimony given here today can be used against you to impeach your credibility?

A: Yes, sir.

Q: If you take the stand in this hearing and, say, for purposes of trying to get the evidence suppressed, 'Yes, I did write this,' and then at trial you were to say, 'No, I didn't write it' or this wasn't your notebook, then the District Attorney could use the fact that you testified in this trial to impeach your credibility and argue that you testified falsely at a previous court proceeding or in the middle of the trial, do you understand that?

A: Yes, sir.

   . . . .

[The court]: It's your right to testify or not to testify. I want to make sure you understand that if you come up here and testify in this hearing in order to try to get this notebook suppressed, that you wrote it, this is your writing in here, then if you take the stand during the trial and say it's not your writing, then [the prosecution] will be able to use this testimony here today in the suppression hearing and bring it in front of the jury and say, 'Isn't it a fact that you told this Judge in another hearing that you did write this document under oath?'

[Defendant]: I totally understand.

   . . . .

[Defense counsel]: If [defendant] did take the stand, it would be pursuant to 104(d), Colorado Rules of Evidence where the defendant would not be allowed to be cross-examined as to matters outside of the specific issue involved here with suppression.

[The court]: From the court's perspective this is not a rule on a forematter [sic], this is a suppression hearing, so he would be subject to cross-examination just as any other witness.

■ A defendant must be able to invoke his Fourth Amendment rights at a suppres-

sion hearing without surrendering his Fifth Amendment right not to incriminate himself. Therefore, a defendant's suppression hearing testimony cannot be used against him at trial on the issue of his guilt or innocence. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

■ Nevertheless, because "the protective shield of *Simmons* is not to be converted into a license for false representations," *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) (fn.9), a number of courts have held that the prosecution may use a defendant's suppression hearing testimony at trial for impeachment purposes. *United States v. Jaswal,* 47 F.3d 539 (2d Cir.1995); *United States v. Beltran–Gutierrez,* 19 F.3d 1287 (9th Cir.1994); *United States v. Quesada–Rosadal,* 685 F.2d 1281 (11th Cir.1982); *People v. Smith,* 67 Ill. App.3d 952, 24 Ill.Dec. 566, 385 N.E.2d 707 (1978); *State v. Campbell,* 69 Ohio St.3d 38, 630 N.E.2d 339, *cert. denied,* —— U.S. ——, 115 S.Ct. 289, 130 L.Ed.2d 204 (1994); *Hall v. Commonwealth,* 16 Va.App. 779, 433 S.E.2d 489 (1993); *see* 2 J. Hall, *Search and Seizure* § 45:46 (2d ed.1993); 4 W. LaFave, *Search & Seizure* § 11.2(d) (3d ed.1996). *But see United States v. Salvucci, supra* (Marshall, J., dissenting); *People v. Spies,* 200 Colo. 434, 443, 615 P.2d 710, 716 (1980) (Quinn, J., dissenting) ("[I]t is the prospect of unrestricted governmental use of the defendant's suppression testimony that chills the exercise of basic constitutional rights by penalizing the exercise of them.").

■ However, in questioning the defendant at the suppression hearing, the prosecution must limit its questioning to the scope of the direct examination; that is, the defendant may invoke his Fifth Amendment right not to incriminate himself at the suppression hearing. *People v. Smith, supra; see* CRE 104(d); *Simmons v. United States, supra.* We agree with this treatment of the issue and adopt it as applicable here.

In asserting error, defendant focuses on the court's last statement concerning defen-

dant's cross-examination and argues that the court told him that he would be subject to cross-examination on all issues.

■ We agree that the trial court's advisement, taken in its entirety, might have been confusing to the unsophisticated listener. The trial court's final statement, which immediately followed defense counsel's correct statement of the law, might be construed as disagreeing with, or qualifying, counsel's statement. That appearance might well have placed defendant in the position of deciding whether to invoke his Fourth Amendment rights at the expense of his Fifth Amendment rights, a position which is untenable under *Simmons.*

However, we hold that if the trial court's advisement was error, it was harmless beyond a reasonable doubt. *See Bartley v. People,* 817 P.2d 1029 (Colo.1991) (constitutional error harmless when properly admitted evidence so overwhelming that violation was harmless beyond a reasonable doubt). Even if we assume that defendant's testimony at the suppression hearing would have resulted in the suppression of the notebook, the admission of the notebook into evidence did not affect a substantial right of defendant as there was other independent and overwhelming evidence of guilt. *See* Crim. P. 52(a); CRE 103(a); *People v. Muniz,* 622 P.2d 100 (Colo.App.1980) (admission of fruit of illegal search harmless error where there was overwhelming evidence of defendant's guilt).

The identification of defendant by sales clerks and their testimony concerning defendant's activities provided compelling evidence of guilt. Therefore, we cannot say that the admission of the notebook into evidence "influenced the outcome of the case or impaired the basic fairness of the trial itself." *Cherry Creek School District No. 5 v. Voelker,* 859 P.2d 805, 812 (Colo.1993).

### III.

Defendant next contends that the trial court erred when it refused to grant a mistri-

al after a prosecution witness testified that defendant had refused to speak with police. We disagree with defendant's contention.

At trial, the following exchange occurred between the prosecution and an air force investigator:

> Q: Okay. Were you involved with asking any questions of [defendant] or was it Mr.—or Detective Larson who did the questioning?
>
> A: Detective Larson advised [defendant] of his rights. And [defendant] declined to make any statements. That was the extent of the interview.

Defense counsel then objected, and the court and counsel for both sides had a discussion off the record. The trial court then sustained the objection and admonished the jury:

> Members of the jury, you're instructed that it's the constitutional right of a person—any person to remain silent. The fact that they refuse to talk to anybody about anything in a law enforcement investigation is their right to do so, and no inferences should be drawn against them in any way because of the fact that they didn't talk to anybody.

Defendant assumes that during the off-record discussion, defense counsel moved for a mistrial. However, even assuming counsel moved for a mistrial, we perceive no error.

A mistrial is a drastic remedy and is warranted only if the prejudice to the accused is too great to be remedied by other means. The trial court has broad discretion to grant or deny a mistrial, and an appellate court will not disturb that decision absent gross abuse of discretion and prejudice to the defendant. *People v. Collins*, 730 P.2d 293 (Colo.1986).

Prosecutorial comment that creates an inference of guilt by referring to the defendant's silence during custodial interrogation effectively penalizes the defendant for exercising a constitutional privilege. *People v. Ortega*, 198 Colo. 179, 597 P.2d 1034 (1979); *People v. Hardiway*, 874 P.2d 425 (Colo.App.1993). However, even if a prosecutor introduces the subject of silence, "reversible error exists only under circumstances in which the prosecutor uses the defendant's silence as a means of implying guilt." *People v. Herr*, 868 P.2d 1121, 1124 (Colo.App.1993).

Here, in our view, the testimony elicited by the prosecution did not so prejudice defendant as to warrant a mistrial. The investigator made only one remark about defendant's silence, and the trial court admonished the jury not to make any inference about defendant's guilt based on his refusal to speak with police. Absent a contrary showing, the jury is presumed to follow the court's instructions and admonitions. *People v. Gutierrez*, 622 P.2d 547 (Colo.1981); *People v. Orona*, 907 P.2d 659 (Colo.App.1995). Therefore, the court did not err in not granting a mistrial.

## IV.

Defendant next argues that the trial court erred in not instructing the jury on the meaning of "value" and that there was insufficient evidence of value to support defendant's theft conviction. We do not agree.

### A.

We review defendant's contention concerning the instructional error under the plain error standard because counsel did not object to the court's failure to give an instruction on the meaning of value. Crim. P. 52(b).

In the context of instructional error, there is no plain error unless a review of the entire record demonstrates a reasonable probability that the improper instruction, or failure to instruct, contributed to the defendant's conviction. *Espinoza v. People*, 712 P.2d 476 (Colo.1985).

The value of items that are stolen is their reasonable market value at the time

of the taking. *People v. Jenkins,* 768 P.2d 727 (Colo.App.1988). Retail price is evidence of market value. *Maisel v. People,* 166 Colo. 161, 442 P.2d 399 (1968); *People v. Binkley,* 687 P.2d 480 (Colo.App.1984). When, however, there is no market for the particular item, then the trier of fact may consider such factors as the original purchase price, replacement cost, the general use and purpose of the article, and salvage value as some evidence of value. *People v. Dunoyair,* 660 P.2d 890 (Colo.1983).

Here, the court instructed the jury that one of the elements of theft is "the value of the thing involved is ten thousand dollars or more." *See* § 18–4–401(2)(d), C.R.S. (1986 Repl.Vol. 8B); *COLJI–Crim.* No. 16:01 (1993 Supp.). The jury was also instructed that the prosecution had to demonstrate all elements of the offense beyond a reasonable doubt.

■ The manager of the store from which the ring was taken testified that its value was $15,500. A clerk at that store testified that she told defendant that the quality of the diamond ring he took was "not that good," but that she "could work with him on the price a little bit." She further testified that the store had priced the ring in excess of $15,000 but that she had never sold a ring at that price during the 13 years she worked at the store. A second clerk testified that the ring was valued at $15,500. A clerk at the second store who showed defendant the ring that he attempted to take testified that the store had listed its price at about $15,000.

In our view, the court's failure to instruct the jury on the meaning of "value" does not rise to the level of plain error. Looking at the record as a whole, we conclude there was no reasonable probability that the trial court's failure to instruct the jury on the definition of value contributed to defendant's conviction. The testimony of the clerks as to the retail price was sufficient evidence of value. Therefore, we find no plain error in the court's failure to instruct.

### B.

Defendant further argues that there was insufficient evidence to convict on the theft charge because the only evidence of value was that the store had purchased the stolen ring for $9,000. We do not agree.

■ In determining the sufficiency of the evidence used to convict, an appellate court must decide whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945 (Colo.1988).

■ Here, there was uncontroverted evidence from the store manager and two clerks that the value of the ring was at least $15,000. Although the ring had remained in the store for an extended period of time at that price, the retail price of the ring was evidence probative of its value. Under these circumstances, viewing the evidence as a whole and in the light most favorable to the prosecution, we conclude there was sufficient evidence of the ring's value to convict for theft over $10,000.

### V.

Next, defendant argues that the trial court abused its discretion in refusing to sever the count against him for the theft at the first store and the counts against him for the attempted theft and criminal impersonation at the second store. We do not agree.

■ Crim. P. 14 provides that if a joinder of offenses will prejudice the defendant, the trial court may order separate trials on the counts charged. A motion to sever counts is addressed to the sound discretion of the court, whose decision will not be overturned absent an abuse of discretion. *People v. Aalbu,* 696 P.2d 796 (Colo.1985). Abuse of discretion is found when it is demonstrated that the joinder caused actual prejudice to the defendant and not a mere difference in trial strategy and that the trier of fact was not able to separate the facts and legal principles applicable to each offense. *People v. Pickett,* 194 Colo. 178, 571 P.2d 1078 (1977); *People v. Taylor,* 804 P.2d 196 (Colo.App. 1990).

Crimes committed simultaneously or in close sequence, crimes that occur in the same or closely related place, and acts that form part of a schematic whole involve interrelated proof. *People v. Rogers,* 742 P.2d 912 (Colo.1987). But, the mere fact that a defendant wishes to testify on one count and not on another does not automatically entitle him to severance. The defendant must also make "a convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other." *People v. Walker,* 189 Colo. 545, 550, 542 P.2d 1283, 1287 (1975); *see People v. Monroe,* 907 P.2d 690 (Colo.App.1995) (cross-petition for certiorari granted December 4, 1995).

Here, defendant committed the highly similar offenses within approximately 30 days at two jewelry stores in the same city. Defendant also had the common scheme of attempting to replace a diamond ring with a cubic zirconia ring. Furthermore, there was no evidence that the jury would be unable to separate the facts and legal principles associated with the two incidents.

When defendant renewed his motion to sever counts just before trial, he stated that he wished to testify regarding one criminal episode, but not another. However, he did not make any showing that he had important testimony to give on one count and had a strong need to refrain from testifying on another. *See People v. Walker, supra.* Furthermore, the court also instructed the jurors at the close of the case that they were to convict solely on the evidence given for each crime and not because defendant might have committed another crime with which he was charged in the case. Under these circumstances, we cannot say the court abused its discretion in refusing to sever the counts.

## VI.

Defendant next contends that the trial court violated his right to a fair trial by redesignating the alternate juror during trial. We disagree.

A party may not complain on appeal of an error that he or she has invited or injected into the case. The party must abide by the consequences of his or her own acts. *People v. Zapata,* 779 P.2d 1307 (Colo.1989).

Here, the trial court brought to the attention of counsel that a juror who had once asked to see a piece of evidence had asked the court clerk a second time to see the evidence. The court stated that it had concerns about the juror for this reason and because of his demeanor during trial. The court told the parties that if they wanted to keep the juror and he became the cause of a hung jury, he would consider that to be a tactical decision by whichever party wished to keep the juror. The court gave both sides the option of making the juror the alternate, and both sides agreed.

Defendant on appeal argues that the trial court made a "veiled threat" to him during the discussion about the juror. However, in our view, the trial court was simply advising the parties of the consequences of the juror remaining on the jury. Thus, under these circumstances, we hold that defendant acquiesced to making the juror an alternate, and he cannot complain of his action on appeal. *See People v. Zapata, supra.*

## VII.

Defendant last argues that the trial court must change the mittimus to indicate that the conviction for attempted theft is a class five, not a class four, felony. We agree.

Effective April 10, 1992, the General Assembly amended the statute such that § 18–4–401(2)(c), C.R.S. (1995 Cum.Supp.) now provides that theft is a class four felony if the item involved is worth at least $400, but less than $15,000.

An attempt to commit a class four felony is a class five felony. Section 18–2–101(4), C.R.S. (1995 Cum.Supp.).

Here, the jury convicted defendant of attempting to steal a ring valued at $9,000, a class five felony. Therefore, the trial court

must change the mittimus to indicate that defendant committed a class five felony for attempted theft.

The judgment is affirmed, and the cause is remanded with directions that the trial court amend the mittimus to show that defendant committed a class five felony for the attempted theft charge.

PLANK and NEY, JJ., concur.