The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Raul GOMEZ–GARCIA, Defendant–Appellant.

No. 06CA2556.

Colorado Court of Appeals, Div. VII.

Sept. 3, 2009.

John W. Suthers, Attorney General, Paul Koehler, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

The Viorst Law Offices, P.C., Anthony Viorst, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge NIETO.*

Defendant, Raul Gomez–Garcia, appeals the judgment entered on jury verdicts finding him guilty of second degree murder and attempted second degree murder. We affirm and remand for correction of the mittimus.

## I. Background

Defendant attended an invitation-only party. The venue hired two police officers as security. Defendant left the party early and attempted to re-enter with several friends. The officers denied them entry because they did not have an invitation. An argument ensued and one of the officers allegedly assaulted defendant. Defendant and his friends then left.

Later, defendant returned to the party and shot the officers. One of the officers was wearing a bullet-proof vest and escaped serious injury. The other officer was not wearing a vest and died. After shooting the officers, defendant fled to Mexico. He was apprehended there by Mexican officials and returned to the United States.

Defendant was charged with second degree murder and attempted first degree murder. At trial, he admitted that he shot the officers but claimed that he had not intended to kill them. He further testified he thought both officers were wearing bulletproof vests and only intended to scare them by shooting them. Relying on this testimony, defense counsel argued that defendant should be convicted of the lesser included crimes of reckless manslaughter and attempted reckless manslaughter. The jury returned verdicts finding him guilty of second degree murder and attempted second degree murder.

Defendant appeals.

## II. Motion to Suppress

Defendant contends that the trial court erred in denying his motion to suppress statements he made when he was arrested in Mexico. We disagree.

### A. Additional Background

The United States requested Mexico's aid in apprehending defendant after learning he had fled there. A Mexican judge issued an arrest warrant for defendant, and several Mexican officials were assigned to locate him. A United States official traveled with the Mexican officials to provide intelligence information and to serve as a technical adviser.

When the officials located defendant, the United States official waited in the car while the Mexican officials made the arrest. The Mexican officials placed defendant between them in the back seat of the car, and the United States official drove the car to the police station. On the way there, defendant made a number of statements. Nobody advised defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Prior to trial, defendant moved to suppress the statements. The trial court denied the motion.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

## B. *Miranda*

Defendant contends the trial court erred in not suppressing his custodial statements because he made them without first receiving a *Miranda* warning. We conclude the trial court properly rejected this argument because *Miranda* warnings are not required where a defendant is interrogated by foreign officials unless, for Fifth Amendment purposes, the foreign officials are engaged in a joint venture with United States officials. Here, there was no such joint venture.

### 1. Standard of Review

When reviewing a trial court's suppression ruling, we defer to the court's factual findings if they are supported by competent evidence, and we review its ultimate legal conclusion de novo. *People v. Hankins,* 201 P.3d 1215, 1218 (Colo.2009). We must limit our review to the evidence presented at the suppression hearing. *Moody v. People,* 159 P.3d 611, 614 (Colo.2007).

### 2. Application of *Miranda* to Foreign Officials

Although Colorado courts have not yet addressed the issue, other jurisdictions have concluded, the parties concede, and we agree, that the exclusionary rule does not automatically apply when the defendant was interrogated by foreign officials in a foreign jurisdiction. *See, e.g., United States v. Abu Ali,* 528 F.3d 210, 227 (4th Cir.2008); *United States v. Yousef,* 327 F.3d 56, 145 (2d Cir. 2003); *United States v. Martindale,* 790 F.2d 1129, 1132 (4th Cir.1986); *Kilday v. United States,* 481 F.2d 655, 656 (5th Cir.1973); *United States v. Trenary,* 473 F.2d 680, 681 (9th Cir.1973). We conclude that, because "the United States cannot dictate the protections provided to criminal suspects by foreign nations," and because "one of the principal purposes of the exclusionary rule—deterrence of unlawful police activity—is absent when foreign agents direct an interrogation," voluntary statements elicited by foreign officials are generally admissible. *Abu Ali,* 528 F.3d at 227; *see also, e.g., Yousef,* 327 F.3d at 145; *Martindale,* 790 F.2d at 1132; *Kilday,* 481 F.2d at 656; *Trenary,* 473 F.2d at 681–82.

However, other jurisdictions have concluded, the parties concede, and we again agree that "United States law enforcement officials may not intentionally evade the requirements of *Miranda* by purposefully delegating interrogation duties to foreign law enforcement officers and then having the fruits of the interrogation admitted at trial in the United States." *Abu Ali,* 528 F.3d at 227–28; *cf. Anderson v. United States,* 318 U.S. 350, 356, 63 S.Ct. 599, 87 L.Ed. 829 (1943) (for suppression purposes, conduct by individuals who were working in collaboration with federal agents was properly considered, even though the federal agents themselves did not engage in any illegal conduct).

To prevent an evasion of *Miranda,* courts have created a "joint venture" exception to the general rule that warnings are not required for questioning by foreign authorities in foreign countries. *Abu Ali,* 528 F.3d at 227–28. This exception applies, and warnings are required, only if American agents "actively participate in questioning conducted by foreign authorities" or somehow "use foreign officials as their interrogation agents in order to circumvent the requirements of *Miranda.*" *Yousef,* 327 F.3d at 145–46; *see United States v. Emery,* 591 F.2d 1266, 1267 (9th Cir.1978) (*Miranda's* rationale "is not present where United States agents do not actively participate in the arrest and interrogation").

It is not entirely clear how actively American agents must participate in a foreign interrogation in order to trigger the need for *Miranda* warnings. *Compare Emery,* 591 F.2d at 1268 (requiring warning because participation of federal agents in arrest and interrogation was "greater than in [*Trenary,* 473 F.2d 680], where the agent merely acted as an interpreter"), *with Abu Ali,* 528 F.3d at 229–30 n. 5 (majority concluded federal agents did not actively participate in overseas interrogation by suggesting questions to their foreign counterparts). What is clear is that mere presence at an interrogation is insufficient. *See Pfeifer v. United States Bureau of Prisons,* 615 F.2d 873, 877 (9th Cir.1980).

■ Here, the trial court found that the United States official's role in the investigation was limited: he provided intelligence information to and consulted with the Mexican officials, but had no supervisory authority over the Mexican officials, did not participate in the arrest, and made no attempt to investigate the underlying crime. The court further found the United States official's role in the interrogation was similarly limited: although he was present when defendant made statements, he did not ask any questions. Ultimately, the trial court concluded that "[i]t appears here that the same scenario could have happened even if [the United States official] was not even present." We also note that the evidence at the suppression hearing did not show any effort by the United States official to encourage interrogation of defendant by the Mexican officials.

We will not disturb the trial court's findings because they are supported by the evidence presented at the hearing. And, under these circumstances, we conclude that the United States and Mexican officials were not engaged in a joint venture for *Miranda* purposes. *Compare Yousef,* 327 F.3d at 146 ("evidence that the United States may have solicited the assistance of a foreign government in the arrest of a fugitive within its borders is insufficient as a matter of law to constitute United States participation under the joint venture doctrine"), *and Pfeifer,* 615 F.2d at 877 (concluding the presence of " 'an American DEA agent' who had a pistol visible under his jacket" during an interrogation by Mexican officials did not alone constitute substantial participation by a federal agent necessary to apply the joint venture doctrine), *with Emery,* 591 F.2d at 1268 (finding a joint venture where United States officials "substantially participated in the entire arrest" by "alert[ing] the Mexican police of the possible activity, coordinat[ing] the surveillance at the [Mexican] airport, suppl[ying] the pilot for the plane and g[iving] the signal that instigated the arrest once it was determined that the marijuana was in the suitcase"). Our conclusion that this case does not require application of the joint venture exception to prevent the evasion of *Miranda* is fortified by the fact that the Mexican authorities here conducted little, if any, interrogation.

Finally, because the United States Marshal in this case was not part of the state investigation and was present solely to facilitate the apprehension and return of a fugitive, the facts of this case do not raise an appreciable risk that American authorities would use foreign authorities to evade or circumvent *Miranda.*

### C. Scope of Cross–Examination

Defendant contends the trial court erred in ruling that, if he testified his statements were coerced, the prosecution would be able to cross-examine him with questions about those statements. Though defendant did not actually testify at the suppression hearing, we will assume this issue is appealable because the People do not argue otherwise. *Compare Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) ("[T]o raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify."), *and People v. Brewer,* 720 P.2d 596, 597 (Colo. App.1985) (same), *with People v. Henderson,* 745 P.2d 265, 266 (Colo.App.1987) ("Where ... the admissibility of a prior felony conviction is challenged on constitutional grounds, a defendant is not required to testify at trial to preserve the issue for review.").

■ We review a trial court's ruling on the permissible scope of cross-examination for an abuse of discretion. *People v. Skufca,* 176 P.3d 83, 89 (Colo.2008). We conclude the trial court did not abuse its discretion.

■ When questioning the defendant at a suppression hearing, the prosecution must limit its questioning to the scope of the direct examination. *People v. Rosa,* 928 P.2d 1365, 1371 (Colo.App.1996). And the defendant may invoke his Fifth Amendment right not to incriminate himself. *Id.* Thus, the trial court should limit cross-examination to those issues relevant to the suppression motion and should not subject the defendant to cross-examination on all issues. *Id.*

Here, defense counsel argued that, if defendant were to testify about the involuntari-

ness of his statements, the prosecution should not be allowed to cross-examine regarding "the actual statements that he was alleged to have made to the officers." The prosecution argued otherwise: "If [defendant] is going to get up and say [his statements were] involuntary, I get to go through [the statements] line by line, word by word, why is this statement involuntary, why isn't this one involuntary, what did they do to precipitate this?"

The trial court agreed with the prosecution and declined to impose the limit on cross-examination that defendant requested:

> I'm not aware of any rule or precedent for the defendant being able to limit his testimony as the defendant is requesting.... So if [he] takes the witness stand ... he's subject to cross-examination on all of the statements in evidence.... [E]very witness who takes the witness stand is subjected to full cross-examination on all of the issues ... that his testimony involves.

We conclude that the trial court acted within its discretion. As the prosecution noted, questions about how the alleged coercion could have caused the alleged statements were within the scope of the proposed direct examination. (For example, the prosecution could have asked defendant how a statement expressing satisfaction that the officer who assaulted him was the one who died could have been caused by the alleged coercion.) And such questions would not implicate defendant's Fifth Amendment rights.

### III. Prosecutorial Misconduct

During closing argument, the trial court overruled defendant's objection to the prosecutor's characterization of the reasonable doubt standard. He now contends that this was error and violated his right to due process. We disagree.

■■■■ The scope of closing argument rests in the sound discretion of the trial court. *Domingo–Gomez v. People*, 125 P.3d 1043, 1049 (Colo.2005). The trial court has the initial responsibility to determine whether the prosecutor's comments likely influenced the jury's verdict or otherwise undermined the fundamental fairness of the

proceedings. *Id.* at 1050. Because the trial court is best positioned to make such evaluations, its rulings will not be disturbed on review absent a showing of a gross abuse of discretion resulting in prejudice and a denial of justice. *Id.* at 1049–50; *People v. Cevallos–Acosta*, 140 P.3d 116, 122 (Colo.App. 2005).

■■■ Here, the jury was properly instructed on reasonable doubt. This instruction included the standard language defining reasonable doubt as "such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves." CJI–Crim. 3:04. Absent a contrary showing, we presume that the jury followed this instruction. *Cevallos–Acosta*, 140 P.3d at 123. Defendant argues the prosecutor's mischaracterization of the reasonable doubt standard during closing argument, together with the court's decision to overrule defense counsel's objection, likely led the jury to misapply the reasonable doubt instruction and, therefore, violated his due process rights.

Defense counsel's closing argument emphasized the "hesitate to act" language in the reasonable doubt instruction. In response to this argument, the prosecutor's rebuttal closing argument proceeded as follows:

> [Prosecutor]: Let me tell you what else the law is about. Defense counsel says if you hesitate to make this decision, you have a reasonable doubt. Let me tell you, that's not what hesitate to act means in the jury instructions. If that was the case, there would be no deliberations. I would finish my argument, sit down, and you would raise your hand. If you didn't instantly raise your hand guilty, reasonable doubt. That's not what it means. What it means is you won't act. That's what the definition means.
>
> [Defense counsel]: Objection, Your Honor. The instructions speak for themselves. [The Court]: The objection is overruled. [Prosecutor]: It means you won't act. That's what the context of reasonable doubt means. It doesn't mean you don't stop and think about it. We want you to stop and think about it. That's why you deliberate. That's why,

as the judge told you, there is no time limit on your deliberations.

 Read in context, the prosecutor's comments could be interpreted as only stating the unremarkable proposition that the jury may deliberate as long as it desires before determining whether it has a reasonable doubt. Therefore, we are not convinced the effect of the prosecutor's comments was to mislead the jury about the "hesitate to act" language in the reasonable doubt instruction. *See Donnelly v. DeChristoforo,* 416 U.S. 637, 646–647, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) ("[C]losing arguments of counsel[ ] are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."). Rather, the likely effect of the prosecutor's comments was minimal. *See Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954) ("A definition of a doubt as something the jury would act upon would seem to create confusion rather than misapprehension. 'Attempts to explain the term "reasonable doubt" do not usually result in making it any clearer to the minds of the jury' ...." (quoting *Miles v. United States,* 103 U.S. 304, 312, 26 L.Ed. 481 (1880)) ).

Under these circumstances, we do not perceive a reasonable likelihood that the prosecutor's comments caused the jury to apply the reasonable doubt standard in a way that violates due process. *Cf. Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (proper inquiry in reviewing whether an ambiguous instruction violates due process is " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution" (quoting *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)) ); *Holland,* 348 U.S. at 140, 75 S.Ct. 127 (reversal not required where reasonable doubt was defined as "the kind of doubt ... which you folks in the more serious and important affairs of your own lives might be willing to act upon"). Therefore, we cannot conclude the trial court abused its discretion.

## IV. Presentence Confinement Credit

Defendant argues, the People concede, and we agree that he is entitled to presentence confinement credit for the time he spent incarcerated in Mexico on the charges at issue in this case. *See* § 18–1.3–405, C.R.S. 2008; *People v. Hardman,* 653 P.2d 763, 764 (Colo.App.1982). Accordingly, the case is remanded so that the mittimus may be corrected to reflect the additional days of presentence confinement in Mexico.

The judgment is affirmed, and the case is remanded for correction of the mittimus as directed.

Judge CONNELLY concurs.

Judge J. JONES specially concurs.

Judge J. JONES specially concurring.

I concur in the majority's resolution of defendant's claims on appeal, though I consider the question whether the United States and Mexican officials were engaged in a joint venture for *Miranda* purposes to be somewhat close. Nonetheless, I would affirm the district court's denial of defendant's suppression motion for the reason the district court's finding that there had been no interrogation is supported by the record. And even were we to assume that the statements defendant made to the Mexican officials at and shortly after his arrest should have been suppressed, I would conclude that any error in admitting those statements was harmless beyond a reasonable doubt.

Absent interrogation, a *Miranda* advisement is not a prerequisite to the admission of a defendant's statements at trial during the prosecution's case-in-chief. *Miranda v. Arizona,* 384 U.S. 436, 478–79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (warnings are required when an individual is subject to custodial interrogation); *see Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297

(1980); *People v. Madrid*, 179 P.3d 1010, 1014–15 (Colo.2008). In this context, "[i]nterrogation includes 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Madrid*, 179 P.3d at 1014 (quoting *Innis*, 446 U.S. at 301, 100 S.Ct. 1682).

Here, the prosecution argued at the suppression hearing that there had been no interrogation. The district court found that there had been no interrogation. On appeal, defendant acknowledges that finding but does not make any specific argument why it was incorrect.

Based on my review of the record of the suppression hearing, *see Moody v. People*, 159 P.3d 611, 614 (Colo.2007), I conclude that the district court's finding is supported by the evidence. Defendant volunteered statements to the Mexican officials and asked them questions, to which they merely responded in a straight-forward way without inviting additional responses from defendant. *See Madrid*, 179 P.3d at 1015; *People v. Rivas*, 13 P.3d 315, 320 (Colo.2000); *People v. Gonzales*, 987 P.2d 239, 242–43 (Colo.1999). Therefore, the lack of *Miranda* warnings was no impediment to the admission of defendant's statements.

In any event, any error in admitting defendant's statements to the Mexican officials was harmless. A constitutional error is harmless if the evidence properly received is so overwhelming that the error was harmless beyond a reasonable doubt. *Bartley v. People*, 817 P.2d 1029, 1034 (Colo.1991); *People v. Larson*, 97 P.3d 246, 251 (Colo.App.2004). In making such a determination, we necessarily look at the strength of the evidence against the defendant, but the ultimate question we must decide is whether the guilty verdict was surely not attributable to the error. *People v. Harris*, 43 P.3d 221, 230 (Colo.2002); *Larson*, 97 P.3d at 251.

Defendant did not contest any of the salient facts established by the prosecution. He admitted he was the shooter and offered no justification for his actions. Instead, he sought conviction on lesser charges of reckless conduct because, he claimed, he did not knowingly cause the death of the slain officer, intend to kill the officer who survived, or knowingly attempt to cause the death of the officer who survived, but rather intended only to scare the officers.

The evidence, however, was overwhelming that defendant specifically targeted the two officers, intended to shoot them, and shot each of them multiple times. One shot struck the deceased officer once in the head. Witnesses testified (without objection) that defendant was very angry, said he wanted to return to the party and shoot the officers, and said that he wanted to kill one of the officers. Defendant himself testified that he intended to shoot the officers and that he aimed for them.[1] His bare assertion that he believed he would not seriously harm the officers because he thought they were wearing bullet-proof vests was, under the circumstances, singularly unpersuasive.

For these additional reasons, I concur in affirming the judgment.

---

1. Because defendant testified and denied intending to seriously harm the officers, his voluntary statements to the Mexican officials, which bore on his state of mind, would have been admissible to impeach him regardless whether a *Miranda* advisement was required or given. *Harris v. New York*, 401 U.S. 222, 225–26, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *People v. Trujillo*, 49 P.3d 316, 321 (Colo.2002).