The PEOPLE of the State of
Colorado, Petitioner,

v.

Timothy J. SNYDER, Respondent.

No. 93SC183.

Supreme Court of Colorado,
En Banc.

May 23, 1994.

Rehearing Denied June 20, 1994.

See also: 849 P.2d 837.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Catherine P. Adkisson, Asst. Atty. Gen., Criminal Enforcement Section, Denver, for petitioner.

David F. Vela, Colorado State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for respondent.

Justice LOHR delivered the Opinion of the Court.

Timothy J. Snyder, the defendant in this case, was convicted on two counts of sexual assault on a child by one in a position of trust.[1] On appeal, the Colorado Court of Appeals concluded that the trial court committed reversible error in admitting evidence of another, later sexual assault on the victim by the defendant. *People v. Snyder*, No. 91CA1129 (Colo.App. Jan. 7, 1993) (not selected for publication). The court therefore reversed the trial court's judgment and remanded the case for a new trial. *Id.* We hold that the trial court properly admitted the similar transaction evidence. We therefore reverse the judgment of the court of appeals and remand the case to that court with directions to reinstate the trial court's judgment of conviction.

## I. *Facts and Procedural History*

R.L., who has learning disabilities, was fourteen years old in January 1990. At that time, he had a twelve-year-old friend and classmate named S.S. S.S. had an older brother, the defendant Timothy J. Snyder (Snyder), who in January 1990 was twenty-six years old. Through R.L.'s friendship with S.S., Snyder became a friend of R.L.

Sometime in the first part of January 1990, Snyder invited R.L. to go on an overnight camping trip with him and S.S. After arriving at the campsite near Cheesman Lake, the group shot guns belonging to Snyder and Snyder's father. That night, Snyder and the two juveniles slept in a tent. Sometime during the night, R.L. awoke to discover that Snyder had unzipped R.L.'s sleeping bag, lowered R.L.'s undershorts, and was stimulating R.L.'s genitals. The next morning, after Snyder apologized to R.L. and said it wouldn't happen again, the group again shot guns.

Later that month, at Snyder's invitation, R.L. went on a second camping trip near Cheesman Lake with Snyder, S.S., and another juvenile. On the way to the campsite,

Snyder allowed R.L. to drive the truck in which they were travelling. At the campsite, they shot a gun for a while and then went to bed. Snyder and R.L. slept together in a tent, separate from the other two boys. R.L. again awoke in the middle of the night to find his sleeping bag unzipped, his shorts and long underwear pulled down, and Snyder stimulating his genitals. In the morning, after Snyder told R.L. that it wouldn't happen again, Snyder and R.L. went for a hike during which they shot a gun. In October 1990, Snyder was charged in Jefferson County District Court with two counts of sexual assault on a child by one in a position of trust for the two camping trip incidents.

In February 1990, after the camping trip incidents but before Snyder was charged with them, the similar transaction at issue in this case occurred. At that time, Snyder obtained permission from R.L.'s mother to take R.L. on an overnight trip to Vail or Aspen for an avalanche training course. S.S. was also to go on the trip. However, instead of traveling to the mountains to attend such a course, Snyder and R.L. went "driving around," stopping at a pornographic business, at the home of one of R.L.'s friends, and at a gun store. The two eventually ended up in Snyder's basement room in Snyder's parents' home. In the room, they smoked cigarettes and marijuana, and watched part of a pornographic videotape provided by Snyder. R.L. understood that a girl was to come to the room to have sex with both of them. The girl never arrived. After falling asleep on Snyder's waterbed, R.L. awoke to find his jeans and underwear pulled down and Snyder stimulating his genitals. The next morning, Snyder and R.L. watched the rest of the pornographic movie. While the movie was playing, Snyder touched R.L.'s genitals over R.L.'s clothes and displayed his own genitals to R.L., bringing attention to the fact that he, Snyder, was aroused. Snyder was subsequently convicted in Arapahoe County District Court on a felo-

---

1. § 18–3–405(2)(b), 8B C.R.S. (1986). This subsection has since been repealed. Ch. 139, sec. 25, § 18–3–405(2)(b), 1990 Colo.Sess.Laws 1023, 1033. The offense of sexual assault on a child by

one in a position of trust has been amended and now appears at § 18–3–405.3, 8B C.R.S. (1993 Supp.).

ny charge arising out of this incident in his parents' home (the bedroom incident).

Thereafter, Snyder was tried to a jury on charges arising out of the incidents that occurred during the two camping trips. The jury found him guilty of two counts of sexual assault on a child by one in a position of trust, § 18–3–405(2)(b), 8B C.R.S. (1986). Prior to trial and after a motions hearing, the trial court ruled that evidence of the bedroom incident would be admitted to show plan, intent, and motive. The court ruled, however, that evidence of the use of the alcohol, cigarettes, and marijuana during that incident would not be allowed. At trial, evidence of the bedroom incident was received consistent with the trial court's earlier rulings and accompanied by appropriate instructions on the limited purposes for which it could be considered.

On appeal, the court of appeals, in an unpublished opinion, concluded that the trial court erred in admitting the similar transaction evidence. *Snyder,* slip op. at 2. The court therefore reversed the trial court's judgment and remanded the case for a new trial. *Id.*

## II. *Similar Transaction Evidence*

When, as in the present case, a defendant is charged with a class 3 felony for sexual assault on a child under section 18–3–405(2), the admissibility of evidence of similar acts or transactions of the defendant is governed by Rule 404(b) of the Colorado Rules of Evidence and section 16–10–301(1) of the Colorado Revised Statutes. § 16–10–301(1), 8A C.R.S. (1993 Supp.); CRE 404(b); *Adrian v. People,* 770 P.2d 1243, 1244 (Colo.1989); *People v. McKibben,* 862 P.2d 991, 992 (Colo. App.1993). Under Rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's character to show that he acted in conformity with that character. CRE 404(b). However, such evidence may be admitted for other purposes such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Under section 16–10–301(1), evidence of similar acts or

transactions may be admitted to show "a common plan, scheme, design, identity, modus operandi, motive, guilty knowledge, or intent." § 16–10–301(1), 8A C.R.S. (1993 Supp.); *accord Adrian,* 770 P.2d at 1244; *Pigford v. People,* 197 Colo. 358, 360, 593 P.2d 354, 356 (1979).

We have previously outlined the steps that a trial court must take before admitting evidence of similar acts under the Colorado Rules of Evidence. *People v. Garner,* 806 P.2d 366 (Colo.1991); *People v. Spoto,* 795 P.2d 1314 (Colo.1990). In *Spoto,* we summarized these steps as follows:

> First, we must ask whether the proffered evidence relates to a material fact, i.e., a fact "that is of consequence to the determination of the action." CRE 401.... If it does, we proceed to the second question: is the evidence logically relevant, i.e., does it have "any tendency to make the existence of [the material fact] more probable or less probable than it would be without the evidence?" CRE 401 ... If the evidence is logically relevant, we then must determine whether the logical relevance is independent of the intermediate inference, prohibited by CRE 404(b), that the defendant has a bad character, which would then be employed to suggest the probability that the defendant committed the crime charged because of the likelihood that he acted in conformity with his bad character. *See* CRE 404(b).... Finally, if the proffered evidence survives the first three parts of the analysis, we must assess whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. CRE 403....

*Spoto,* 795 P.2d at 1318 (citations other than CRE omitted). In addition to these requirements, section 16–10–301 requires the trial court to instruct the jury as to the limited purpose for which the evidence is admitted and for which the jury may consider it. § 16–10–301(3), 8A C.R.S. (1986). This instruction must be given at the time of the reception of the evidence and again in the general charge to the jury. *Id.*[2]

---

**2.** § 16–10–301(4), 8A C.R.S. (1986), imposes the additional requirement that "[b]efore admitting

evidence of similar acts or transactions, the court must find that the people have introduced suffi-

In the present case, the trial court, following the *Spoto* analysis, first found that the evidence of the bedroom incident was relevant to show Snyder's plan, intent, and motive. Next, the court found that the evidence had logical probative value as to these factors. The court then found that the evidence was independent of the natural inference of bad character and that the probative value of the evidence outweighed the unfair prejudice. Finally, as required by section 16–10–301, the court instructed the jury at trial before each instance in which evidence of the bedroom incident was received, and again in the written instructions at the conclusion of the evidence, on the limited purpose of the similar transaction evidence. *See* § 16–10–301(3), 8A C.R.S. (1986).

■ On appeal, the court of appeals ruled that the evidence of the bedroom incident was not logically relevant to any material issue in the case. *Snyder*, slip op. at 2. In the court's view, plan was not a material issue because Snyder did not contend that he had engaged in the charged conduct but that it was accidental or that R.L. was mistaken as to the identity of his attacker. *Id.*[3] Intent and motive were not material issues, said the court, because they were necessarily implied from the nature of the alleged acts. *Id.* The court also stated that the evidence "impermissibly raised the inference that, because defendant had engaged in such conduct on another occasion, he had criminal proclivities and therefore likely engaged in the wrongful conduct at issue." *Id.* We disagree with this analysis.

Intent was a material issue in this case, and plan and motive were themselves probative of intent. The elements of the offense with which Snyder was charged were presented to the jury in the court's written instructions as follows:

The elements of the crime of sexual assault on a child by one in a position of trust are:

1. That the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. knowingly,
a. subjected another not his or her spouse,
b. to any sexual contact, and
4. that person was less than fifteen years of age, and
5. the defendant was at least four years older than that person,
6. at the time of the commission of the act, and
7. the defendant was in a position of trust with respect to the victim.

Jury Instruction 14; *see* § 18–3–405(1), (2)(b), 8B C.R.S. (1986).

"Sexual contact," in turn, was defined in the instructions as "knowingly touching the victim's intimate parts by the actor ... or knowingly touching the clothing covering the immediate area of the victim's ... intimate parts if that sexual contact is for the purpose of sexual arousal, gratification, or abuse." Jury Instruction 17; *see* § 18–3–401(4), 8B C.R.S. (1986); *People v. West*, 724 P.2d 623 (Colo.1986). The trial court ruled that evidence of the bedroom incident would be admitted to show plan, motive, and intent. The jury was given the following instruction concerning this evidence:

The evidence that you heard concerning another act by the defendant was admitted for the limited purpose of showing common plan, motive and for the additional limited purpose of showing that the alleged sexual contact was for the purpose of sexual arousal, gratification, or abuse.

Jury Instruction 12.

This instruction makes clear that in the context of the admission of the similar transaction evidence to show plan, motive, and intent, the intent element was equated with a

---

cient evidence against the defendant to constitute a prima facie case warranting submission of the case to the jury on the evidence presented other than that of similar acts or transactions." *Accord Adrian v. People*, 770 P.2d 1243, 1244 (1989). Compliance with that requirement is not at issue in this appeal.

3. Instead, Snyder consistently contended that the alleged sexual misconduct on the two camping trips never occurred and that R.L. was fabricating a description of the events.

purpose of sexual arousal, gratification, or abuse, through sexual contact. The court of appeals, however, ruled that intent was not a material issue because it was necessarily implied from the nature of the alleged acts. *Snyder,* slip op. at 2. This conclusion is incorrect.

■ In a criminal case, the prosecution must prove each element of an offense beyond a reasonable doubt. *Jolly v. People,* 742 P.2d 891, 896 (Colo.1987). The State has a right to prove each of these elements unless the defendant stipulates to facts establishing one or more elements and the prosecution's case is not weakened by acceptance of such a stipulation, with the consequent loss of the legitimate moral effect of its evidence. *Martin v. People,* 738 P.2d 789, 794 (Colo.1987). Snyder did not stipulate that he committed the two camping trip assaults, much less that he committed them for the purpose of sexual arousal, gratification, or abuse. Intent was a material element that the prosecution had a right to prove. Despite the fact that the alleged conduct constituting the assaults is highly suggestive of a purpose of sexual arousal, gratification, or abuse, the element of intent was distinct from and additional to the conduct and was a material fact essential to the prosecution's case. The first prong of the *Spoto* analysis, then, was satisfied. *Spoto,* 795 P.2d at 1318.

The evidence of the bedroom incident also satisfied the second prong of the analysis. The evidence was logically relevant to the element of intent. Snyder's own sexual arousal during the bedroom incident as well as the plan and motive revealed by the incident tended to make the existence of the requisite intent more probable. The similarities between the bedroom incident and the camping trip assaults revealed Snyder's overall plan repeatedly to abuse R.L. in his sleep after gaining his confidence and placing him in a position of vulnerability. The similar transaction evidence was probative of Snyder's motive to establish a pattern of abuse through a continuing relationship with a particular victim under distinctive circumstances. The evidence indicated that Snyder's motive was continually to exploit his relationship with R.L. by retaining his trust,

luring him into positions of vulnerability, and sexually abusing him in his sleep.

The third requirement of the *Spoto* analysis was also met. The logical relevance of the similar transaction evidence was independent of the inference that Snyder acted in conformity with bad character. The court of appeals' opinion suggests that if such an inference is raised at all, the evidence is inadmissible. *Snyder,* slip op. at 2. However, almost by definition, similar transaction evidence will suggest bad character and action in conformity therewith. The third prong of the *Spoto* test does not demand the absence of the inference but merely requires that the proffered evidence be logically relevant independent of that inference. *People v. Spoto,* 795 P.2d 1314, 1318 (Colo.1990). The probability that Snyder acted with the requisite intent was increased by the evidence of the bedroom incident independent of the inference of conformity with bad character.

■ The crucial inquiry in this case concerns, as it will in most cases, the fourth prong of the *Spoto* analysis, that is, whether the probative value of the similar transaction evidence was substantially outweighed by the danger of unfair prejudice. *Id.* The trial court ruled that "the probative value of the evidence outweighs the unfair prejudice." Trial courts are accorded considerable discretion in determining whether the probative value of evidence outweighs its prejudice to the defendant. *People v. Ibarra,* 849 P.2d 33, 38 (Colo.1993); *People v. Czemerynski,* 786 P.2d 1100, 1108 (Colo.1990); *Adrian v. People,* 770 P.2d 1243, 1245 (Colo.1989). A trial court's determination on this matter will not be overturned on appeal in the absence of an abuse of discretion. *Ibarra,* 849 P.2d at 38; *Czemerynski,* 786 P.2d at 1108. A reviewing court will conclude that the trial court abused its discretion only if the trial court's ruling was manifestly arbitrary, unreasonable, or unfair. *Id.*

■ Here, the trial court did not abuse its discretion in ruling that the probative value of the evidence outweighed the unfair prejudice. The evidence that Snyder had assaulted R.L. during the bedroom incident was

highly probative of Snyder's plan, motive, and intent. The similarities between the bedroom incident and the camping trip assaults lessened the danger of unfair prejudice to Snyder. In this regard, the trial court soundly reasoned:

> And in this third act it is isolated somewhat from the normal inference of bad character because it is part of a particular series of events. It is not a totally separate distinct incident which has no connection whatsoever with the acts alleged. When you have the same victim, the same series of events over a very limited period of time, I believe that the inference of bad character is not as serious as it is when you are dealing with some totally separate incident which would bring before the jury other allegations of bad conduct. This is more in the stature of a continuation of a single event, although clearly through three separate events. But because of that I think that the probative value does outweigh the unfair prejudice.

The fourth and final requirement of the *Spoto* analysis was thus satisfied. Furthermore, as earlier discussed, the trial court fulfilled the requirement of section 16–10–301 that the jury be instructed as to the limited purpose of the similar transaction evidence. *See* § 16–10–301(3), 8A C.R.S. (1986); *Garner*, 806 P.2d at 370.

Finally, as we have noted in the past, enactment of section 16–10–301 itself "reflects a policy judgment that in sexual assault cases a need arises to make similar transactions evidence more readily available." *Adrian v. People*, 770 P.2d 1243, 1245 n. 2 (Colo.1989).

Accordingly, we hold that the trial court did not err in admitting the later transaction evidence. We therefore reverse the judgment of the court of appeals and remand the case to that court with directions to reinstate the trial court's judgment of conviction.