The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

James R. DUNCAN, Defendant–Appellant.

No. 99CA1142.

Colorado Court of Appeals,
Div. V.

Jan. 18, 2001.

As Modified on Denial of Rehearing
March 1, 2001.

Certiorari Denied Oct. 22, 2001.

Ken Salazar, Attorney General, Melissa D. Allen, Special Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Joan E. Mounteer, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge RULAND.

Defendant, James R. Duncan, appeals from the judgment of conviction entered upon jury verdicts finding him guilty of three felony offenses. The convictions include sexual assault on a child in violation of § 18–3–405, C.R.S.2000, and sexual assault on a child by one in a position of trust in violation of § 18–3–405.3, C.R.S.2000. The final conviction was for enticement of a child in violation of § 18–3–305, C.R.S.2000. We affirm.

Defendant lived in a mobile home park. One morning he went to the victim's trailer in a nearby park and asked the victim's father for permission to take the victim back to defendant's trailer. The stated purpose was to help defendant with some household chores. Defendant represented that he needed the victim's assistance due to a back injury. The victim was 12 years old at the time. Defendant indicated that the victim would be paid for assisting with the chores.

According to the prosecution's evidence, defendant drove the victim back to defendant's trailer and proceeded to show the victim the trash that he wanted removed. Defendant then placed his hand on the victim's penis and buttocks, rubbed his hand in a circular motion, and asked the victim if he wanted to make some extra money. The victim called his father. The victim then left defendant's trailer, and his father drove him to the police station.

After being advised of his *Miranda* rights, defendant was interviewed on two occasions by an investigating officer. In the first interview, defendant denied touching the victim other than on his shoulder to indicate where the trash was located. Defendant claimed that the victim was lying. Defendant also stated that he happened to be scratching his groin area while making the statement about earning extra money, and he indicated that the victim misinterpreted both defendant's body language and his statements.

In the second interview, defendant stated that, although he did not touch the victim, he had wanted to for several months. Defendant also conceded that he liked young boys like the victim too much.

I.

During voir dire one prospective juror expressed difficulty understanding some of the legal concepts included in questions asked by the prosecution and defense. The prospective juror was born in the Philippines, and English was not her first language. Defendant asked the trial court to disqualify the prospective juror because of this difficulty. The trial court denied the request, finding that the juror's command of the English language was sufficient for purposes of jury service. Defendant now claims that this ruling constitutes reversible error. We disagree.

Section 13–71–105(2)(b), C.R.S.2000, provides that a prospective juror shall be disqualified if that individual is unable to read, speak, and understand the English language. Further, the issue whether a pro-

**1182**

spective juror should be disqualified under the statute is a question of fact for resolution by the trial court. *See People v. Rodriquez,* 638 P.2d 802 (Colo.App.1981). And, as with other factual findings, we may not disturb that court's determination unless it is unsupported by the record. *See Linley v. Hanson,* 173 Colo. 239, 477 P.2d 453 (1970).

Here, defendant points to three occasions during voir dire where the prospective juror expressed difficulty understanding questions that included the legal concept of "beyond a reasonable doubt." Later, in response to defense counsel's question concerning whether there was any reason she should not serve as a juror, the juror repeated that she might have difficulty with understanding what was said.

We recognize that the juror's responses were brief and reflected a degree of uncertainty. Indeed, her lack of confidence was highlighted by the fact that she was questioned at the same time as another prospective juror, who had served on a jury before and was both articulate and verbose.

However, the trial court explained to the juror the prosecution's burden of proof, and the juror indicated that the clarification was helpful. Moreover, at no point during voir dire did the prospective juror state that she was unable to understand English.

Additionally, although her answers and statements were brief, they were responsive to the questions asked. Hence, there is record support for the court's finding that the juror's fluency in English was sufficient for service, and thus we find no error. *See People v. Rodriquez, supra.*

## II.

Defendant next asserts the court erred in denying his pre-trial motion to declare § 18–3–401(3.5) unconstitutional. According to defendant, the statute is unconstitutionally vague because it fails to define precisely what constitutes a "position of trust." Specifically, defendant claims that because he was not acting in an actual parental or guardianship capacity with regard to the victim, he was not given fair notice that

the statute applied to him. We conclude that the statute is constitutional.

A statute is presumed to be constitutional. As a result, the party challenging the statute must prove the claim of unconstitutionality beyond a reasonable doubt. *See People v. Longoria,* 862 P.2d 266 (Colo.1993). To the extent that the challenge is based on alleged vagueness, a reviewing court must uphold the validity of the statute if a reasonable and practical construction may be applied to resolve the claim. *See People v. Buckallew,* 848 P.2d 904 (Colo.1993). The relevant inquiry then is whether the statute describes the forbidden conduct in terms such that persons of common intelligence can readily understand its meaning and application. *See People v. Gross,* 830 P.2d 933 (Colo.1992).

One in a "position of trust" is defined in § 18–3–401(3.5) to include:

*any person who is* a parent or *acting in the place of a parent and charged with any of a parent's* rights, *duties,* or responsibilities *concerning a child, including* a guardian or *someone otherwise responsible for the general supervision of a child's welfare,* or a person who is charged with any duty or responsibility for the health, education, welfare, or supervision of a child, including foster care, child care, family care, or institutional care, either independently or through another, *no matter how brief, at the time of an unlawful act.* (emphasis supplied)

The trial court reasoned that, because defendant affirmatively asked the victim's father for permission to take the victim to defendant's home to work, and the father consented, it was reasonable to construe that permission as notice to defendant that he was in a position of trust to perform parental duties and supervision with respect to the victim. We agree with that reasoning.

Specifically, a person of ordinary intelligence could rationally conclude that, upon taking the victim to defendant's home where the two of them were to be alone, defendant assumed responsibility for the welfare and supervision of the child both en route and in the home. *See People v. Luman,* 994 P.2d

432 (Colo.App.1999)(jury could reasonably conclude that defendant was in a position of trust because he lived with victim, contributed money to the household, and often spent time alone with victim). Further, contrary to defendant's contention, in our view neither defendant's back injury nor his stated desire briefly to employ the victim negates this obvious responsibility.

Defendant alternatively argues that § 18–3–401(3.5) defines "position of trust" so broadly that it renders § 18–3–405.3 indistinguishable from § 18–3–405, the general sexual assault on a child statute. We again disagree.

Someone not responsible for the general supervision of a child's welfare in any respect, such as a stranger, may otherwise be in a position to sexually assault a child. In that scenario, § 18–3–405.3 does not apply. Cf. *People v. Leske*, 957 P.2d 1030 (Colo.1998)(sexual assault on a child is not a lesser-included offense of sexual assault on a child by one in a position of trust). Hence, we perceive a clear distinction between the statutes and thus conclude that the void for vagueness challenge must be rejected.

We have considered and reject defendant's contention that the evidence was insufficient to establish the element of position of trust. See *Kogan v. People*, 756 P.2d 945 (Colo. 1988).

### III.

▪ Prior to trial the prosecution filed a notice of intent to introduce evidence of prior similar transactions at trial. During a hearing, four men testified that they had been sexually assaulted by defendant when they were minors in various incidents occurring prior to the incident in this case. The court acknowledged the prejudicial nature of this testimony and ruled that it was admissible only for the limited purposes of rebutting the defense of recent fabrication, to show intent, and to demonstrate the absence of mistake or accident.

At trial three of the men testified to incidents that occurred when they were all approximately the same age as the victim. In all three cases, defendant took the victim to a secluded area or was otherwise alone with the victim, and in one case defendant asked the victim if he would like to make some money in exchange for sexual contact.

Defendant asserts that the trial court erred in admitting this evidence. First, he argues that the similar transaction evidence was not logically relevant independent of an intermediate inference that defendant was a bad person. Next, he contends that the prejudicial effect of the evidence far outweighed any probative value. Finally, defendant asserts that the prosecution failed to articulate, with requisite precision, a hypothesis by which a material fact could be permissibly inferred from the proffered testimony and that the trial court improperly assumed the prosecution's burden of articulating a theory. We are not persuaded by any of these contentions.

▪ A trial court is granted substantial discretion to decide questions concerning the admissibility of evidence. See *People v. Rodriguez*, 914 P.2d 230 (Colo.1996). This rule extends to similar transaction evidence. See *People v. Janes*, 942 P.2d 1331 (Colo.App. 1997). Indeed, the General Assembly has in effect expressed a policy judgment in § 16–10–301, C.R.S.2000, that there is a need in sexual assault cases to make similar transaction evidence more readily available. See *Adrian v. People*, 770 P.2d 1243 (Colo.1989). Consequently, absent a showing that the court has clearly abused its discretion, we must affirm its evidentiary ruling. See *People v. Janes, supra*.

In cases involving the sexual assault on a child, evidence of prior similar acts by a defendant may be admissible pursuant to § 16–10–301 and CRE 404(b) when offered for a number of purposes. As pertinent here, § 16–10–301(3), C.R.S.2000, authorizes the introduction of this evidence, among other things, to show intent and to refute the defense of recent fabrication. As pertinent here, CRE 404(b) also provides for use of this evidence to prove intent and absence of mistake or accident.

To be admitted, similar transaction evidence must satisfy the four requirements

articulated in *People v. Spoto*, 795 P.2d 1314 (Colo.1990).

As pertinent here, those requirements include a determination that the logical relevance of the evidence is independent of any intermediate inference prohibited by CRE 404(b) that the defendant has a bad character and committed the crime charged because of his bad character. Finally, the court must be satisfied that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant. *See People v. Spoto, supra.*

Here, the court ruled that the testimony would not be admitted to show a common plan, scheme, motive, *modus operandi*, or preparation, due to the remoteness in time of the similar incidents. However, the court also found that the testimony was relevant to refute the anticipated defense of the victim's recent fabrication of the incident and to show intent and absence of mistake or accident. Following the testimony, the court properly instructed the jury that it was to consider the evidence only for the limited purposes noted above. *See People v. Garner*, 806 P.2d 366 (Colo.1991). We find no abuse of the court's discretion.

Similar transaction evidence, almost by definition, focuses attention on a defendant's bad character. Due to this fact, the third *Spoto* prong does not require the absence of an inference based on propensity. Instead, the rule only requires that the proffered evidence be logically relevant independent of that inference. *See People v. Snyder*, 874 P.2d 1076 (Colo.1994).

In this case, the probability that defendant intended to have sexual contact with the victim was increased by the evidence that defendant had similarly attempted or committed sexual assault on three other young men in the past. *See Douglas v. People*, 969 P.2d 1201 (Colo.1998)(reviewing court should accord greater deference to trial court ruling admitting similar transaction evidence if there are multiple similar acts). The evidence also increased the probability that the child was not mistaken in his interpretation of defendant's words and actions. Thus, there was no error in ruling that the testimony was logically relevant.

The proffered testimony also served to rebut defendant's claim that the victim was lying. *See People v. Janes, supra.* To the extent that this defense was labeled by the prosecution and the trial court as "recent fabrication," we note that there was no objection by defendant to this characterization.

We also reject defendant's contention that the probative value of the evidence was far outweighed by its prejudicial impact. This issue is addressed to the trial court's discretion as well, and we fail to perceive how the evidence would inflame the emotions of the jurors to reach an irrational decision. *See People v. Delgado*, 890 P.2d 141 (Colo.App. 1994). Hence, we again find no abuse of discretion. *See People v. Willner*, 879 P.2d 19 (Colo.1994).

Finally, we find no improper judicial assistance to the prosecution in determining the appropriate purpose for admission of the evidence. The prosecution attempted to offer the evidence for essentially all of the reasons authorized by the statute and rule. The court simply determined for which of those purposes it would be admitted.

In sum, defendant fails to establish, and our review of the record does not otherwise suggest that the trial court's ruling was arbitrary, unreasonable, or unfair. *See People v. Nuanez*, 973 P.2d 1260 (Colo.1999). Hence, we approve its ruling.

The judgment is affirmed.

NIETO, J., concurs.

ROY, J., concurs in part and dissents in part.

Judge ROY concurring in part and dissenting in part.

While I concur in the majority opinion as to the voir dire issue and the constitutionality of § 18–3–401(3.5), C.R.S.2000, as applied, I disagree with the majority on the admission of the prior similar act evidence pursuant to CRE 404(b) and § 16–10–301, C.R.S.2000.

Evidence of other acts is not admissible to prove the character of the accused in order to show that he or she acted in conformity with that character on a particular occasion.

This prohibition derives from the basic criminal law precept that a person may not be convicted of a crime by proof that he or she is guilty of another, and it has its genesis in the due process right to a fundamentally fair trial. *See* CRE 404(b); *People v. McKibben,* 862 P.2d 991 (Colo.App.1993).

In cases involving sexual assault of a child, evidence of prior similar acts by a defendant may be admissible pursuant to § 16–10–301, C.R.S.2000, and CRE 404(b) when offered for certain limited purposes.

Section 16–10–301(3), C.R.S.2000, provides as follows:

> The prosecution may introduce evidence of other acts of the defendant to prove the commission of the offense as charged for any purpose other than propensity, including: refuting defenses, such as consent or recent fabrication; showing a common plan, scheme, design, or modus operandi, regardless of whether identity is at issue and regardless of whether the charged offense has a close nexus as part of a unified transaction to the other act; showing motive, opportunity, intent, preparation, including grooming of a victim, knowledge, identity, or absence of mistake or accident; or for any other matter for which it is relevant....

CRE 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Thus, the rule and the statute are permissive, that is, they permit the introduction of evidence that might otherwise be prohibited by the due process clause, with some limitations and conditions.

If the prosecution intends to introduce prior similar transaction evidence pursuant to § 16–10–301, it must advise the court and the defendant in advance of trial of the purposes for which the evidence is offered. Additionally, the trial court must determine whether the prior similar transaction(s) occurred by a preponderance of the evidence, whether the purpose for which the evidence is offered are proper, and whether the prosecution has established a prima facie case against the defendant for the charged offense. *See generally* § 16–10–301.

Prior similar transaction evidence under CRE 404(b) also must satisfy the four requirements set forth in *People v. Spoto,* 795 P.2d 1314 (Colo.1990). First, the court must determine whether the proffered evidence relates to a material fact. Second, the court must determine whether the evidence is logically relevant, that is, whether it tends to make the existence of a material fact more probable or less probable than it would be without the evidence. *See* CRE 401; *People v. Quintana,* 882 P.2d 1366 (Colo.1994). Third, the court must determine that the logical relevance of the evidence is independent of any intermediate inference prohibited by CRE 404(b), *i.e.,* that the defendant has a bad character and probably committed the crime charged because he likely acted in conformity with his bad character. Finally, the court must determine that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant. *See People v. Snyder,* 874 P.2d 1076 (Colo.1994); *People v. Spoto, supra.*

In this case, the prosecution sought to introduce the testimony of four adult males who had been victims of sexual assault by the defendant during their childhood. At the pretrial hearing, the prosecution stated, in addition, an intention to use this testimony to refute the anticipated defense that the victim made up the incident, and to rebut the anticipated claim of recent fabrication. The prosecution also stated that it intended to use the testimony to show modus operandi, motive, opportunity, intent, preparation, and absence of mistake or accident. Suffice it to say, the prosecution's intent was to offer the evidence for any reason it could conceivably be admitted under the rule or statute.

The trial court found that the prosecution had sufficiently proved that the defendant had sexual contact with each of the four men when they were children. The trial court further concluded that, due to the remote-

ness in time of the prior similar acts, the prosecution would be prohibited from introducing the testimony to show a common plan, scheme, motive, modus operandi, or preparation. However, the trial court found that the testimony was relevant to refute the anticipated defense of recent fabrication and to show intent and/or absence of mistake or accident. The trial court further concluded that the testimony was logically relevant to the material question of fact concerning whether sexual contact had actually occurred between defendant and the victim, and that this logical relevance existed independent of any inference of propensity.

At trial, the court found that the prosecution had established a prima facie case and allowed the introduction of the testimony into evidence. Three of the four men testified at trial. The trial court then instructed the jury to consider the evidence only for the limited purposes of refuting the defense of recent fabrication and to establish intent and/or absence of mistake or accident.

At both the pretrial hearing and at trial the defendant objected to the introduction of this evidence, stating that it was irrelevant to his theory of the case, which was that the event did not occur and the victim was lying.

On appeal, the defendant argues that the prior similar transaction evidence failed the third *Spoto* prong, in that it was not logically relevant independent of an intermediate inference prohibited by CRE 404(b). In a related argument, defendant asserts that the prosecution failed to articulate a "precise evidentiary hypothesis" from which a material fact can be permissibly inferred from the proffered testimony pursuant to *Spoto,* and that the trial court improperly assumed the prosecution's burden of articulating a theory upon which the testimony was to be introduced.

A trial court has substantial discretion in deciding questions concerning the admissibility of evidence. Consequently, absent the showing of an abuse of discretion, the trial court's ruling will be affirmed. *See People v. Janes,* 942 P.2d 1331 (Colo.App.1997).

The probability that sexual contact occurred between defendant and the victim may indeed be increased by the testimony that the defendant had sexually assaulted the three other young men when they were children. That increased probability is not, however, independent of the prohibited inference.

I disagree with the majority regarding the applicability of this evidence to a claim of recent fabrication, accident, or mistake. At trial, the defense did not argue that the defendant was acting under any mistaken belief or by accident. *See People v. Fulton,* 754 P.2d 398 (Colo.App.1987); *People v. Jackson,* 748 P.2d 1326 (Colo.App.1987) (the absence of mistake or accident exception to CRE 404(b) concerns the defendant's mistake or accident, not the victim's).

Moreover, recent fabrication was not an issue at trial. Claims of recent fabrication generally arise when there is a delay in reporting the incident or a change in the testimony coupled with an intervening motive. *See People v. Eppens,* 979 P.2d 14 (Colo.1999). Such a scenario did not occur here. Rather, the victim immediately reported the incident while still in the presence of the defendant, and his version of the event did not change.

Additionally, since the defendant wholly denied the event, he did not place his intent at issue. I acknowledge that mens rea is an element of the offense, here, "knowingly," and the prosecution is required to prove it. Section 18–3–405, C.R.S.2000. However, evidence of a person's past mental state is of extremely marginal relevance in determining that person's present mental state, and has no logical relevance independent of the prohibited inference. In addition, the evidence is highly prejudicial.

Stripped of the niceties, the testimony was introduced to rebut the defendant's claim that the incident did not happen and that the victim was lying, the theory of the defense. While introduction of the testimony may be permissible to rebut this theory under the catch-all provision in § 16–10–301(3), which provides for the admission of evidence of other acts "for any other matter for which it is relevant," the prosecution failed to state, and I cannot imagine, exactly how this testimony was logically relevant to that issue

independent from any prohibited inference, as required by *People v. Spoto, supra.*

This testimony was offered simply to prove that, since defendant had similarly sexually assaulted three young boys in the past, he sexually assaulted the victim. In my view, the trial court abused its discretion in permitting this testimony and I would reverse and remand for a new trial.