**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Joel H. BECKER, Defendant–Appellant.**

**No. 01CA0151.**

Colorado Court of Appeals, Div. IV.

May 23, 2002.

Ken Salazar, Attorney General, Matthew S. Holman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Joel H. Becker, appeals the sentences imposed upon his convictions for first degree sexual assault and second degree burglary. We affirm.

Defendant broke into the victim's apartment at night and, by threatening her life with a scissors, forced her to submit to oral, vaginal, and anal sex.

Pursuant to a plea agreement in which other charges were dismissed, defendant pleaded guilty to first degree sexual assault (forcing submission by using a deadly weapon to threaten death), a class two felony in violation of Colo. Sess. Laws 1975, ch. 171, § 18–3–402(1)(b) at 628; Colo. Sess. Laws 1983, ch. 199, § 18–3–402(1) at 698; and Colo. Sess. Laws 1985, ch. 151, § 18–3–402(3)(c) at 666. Defendant also pleaded guilty to second degree burglary committed as a class four felony in violation of § 18–4–203, C.R.S.2001. The plea agreement did not contain any sentence stipulation other than that defendant's sentences in this case would be served concurrently with his sentences in two unrelated cases.

The trial court imposed an eight-year sentence to the custody of the Department of Corrections (DOC) on the conviction for second degree burglary and, on the first degree sexual assault conviction, an indeterminate sentence of forty-eight years to defendant's natural life under the Colorado Sex Offender Lifetime Supervision Act of 1998, § 16–13–804, C.R.S.2001. The court ordered that the sentences be served consecutively to each other and, in accordance with the stipulation of the plea agreement, concurrently with defendant's sentences in his other cases.

## I. Minimum Length of Indeterminate Sentence

Defendant first argues that the trial court exceeded its authority by imposing an indeterminate sentence of forty-eight years to life because the relevant provision of the Lifetime Supervision Act does not permit an indeterminate sentence with a minimum length that is greater than the midpoint of the presumptive range applicable to the underlying offense. We disagree.

As set forth above, defendant was convicted of first degree sexual assault committed as a class two felony. The applicable sentencing provision of the first degree sexual assault statute then in effect provided as

follows: "Any person convicted of sexual assault committed on or after November 1, 1998, under any of the circumstances described in this section shall be sentenced in accordance with the provisions of [the Lifetime Supervision Act]." Section 18–3–402(6), C.R.S.2001 (formerly codified at § 18–3–402(4)(b)).

The relevant provisions of the Lifetime Supervision Act provide as follows:

(a) ... [T]he district court having jurisdiction shall sentence a sex offender to the custody of the department for an indeterminate term of *at least* the minimum of the presumptive range specified in section 18–1–105, C.R.S., for the level of offense committed and a maximum of the sex offender's natural life.

(b) If the sex offender committed a sex offense that constitutes a crime of violence, as defined in section 16–11–309, the district court shall sentence the sex offender to the custody of the department for an indeterminate term of *at least* the midpoint in the presumptive range for the level of offense committed and a maximum of the sex offender's natural life.

Section 16–13–804(1), C.R.S.2001 (emphasis added).

First degree sexual assault committed by means of a deadly weapon is a crime of violence under § 16–11–309(2), C.R.S.2001. Section 16–11–309(1)(c), C.R.S.2001, of the crime of violence sentencing statute, provides:

Notwithstanding the provisions of paragraph (a) of this subsection (1), any person convicted of a sex offense, as defined in section 16–13–803(5), committed on or after November 1, 1998, that constitutes a crime of violence shall be sentenced to an indeterminate term of incarceration of *at least* the midpoint in the presumptive range up to a maximum of the person's natural life, as provided in section 16–13–804(1).

(Emphasis added.)

Therefore, under §§ 16–11–309(1)(c) and 16–13–804(1)(b), the trial court in this case was required to impose a sentence of "at least" sixteen years, the midpoint in the pre-sumptive range. *See* § 18–1–105(1)(a)(V)(A), C.R.S.2001 (the presumptive sentencing range for a class two felony is eight to twenty-four years imprisonment).

An indeterminate sentence was also required under § 18–1–105(9)(e.5), C.R.S.2001, which provides as follows:

If the defendant is convicted of the class 2 felony of sexual assault in the first degree under section 18–3–402(3), commission of which offense occurs on or after November 1, 1998, the court shall be required to sentence the defendant to an indeterminate sentence of *at least* the midpoint in the presumptive range for the punishment of that class of felony up to the defendant's natural life.

(Emphasis added.)

Defendant concedes that the trial court was required to impose an indeterminate sentence of "at least" sixteen years under the foregoing provisions. However, defendant contends that the words "at least" in §§ 16–11–309(1)(c), 16–13–804(1)(b), and 18–1–105(9)(e.5) denote a fixed minimum length and that the trial court was therefore without authority to impose an indeterminate sentence with a minimum length greater than sixteen years. We are not persuaded.

Recently, in *People v. Smith*, 29 P.3d 347 (Colo.App.2001), a division of this court analyzed the "at least" language of § 16–13–804(1)(a) and rejected the statutory construction and supporting arguments advanced by defendant here. The division concluded that "defendant's interpretation of the statute renders meaningless the General Assembly's insertion of 'at least,' " and that term "by its plain meaning provides the court with the option to impose an increased minimum sentence." *People v. Smith, supra*, 29 P.3d at 349.

We find the reasoning of *Smith* to be persuasive and, following it here, conclude that it is dispositive of defendant's arguments. Accordingly, we reject defendant's claim that it is necessary to apply the rule of lenity.

## II. Minimum Length and Equal Protection

Alternatively, defendant argues that if the Lifetime Supervision Act vests a trial court with discretion to establish the minimum length of a sex offender's indeterminate sentence, then the Act violates equal protection principles because such discretion may give rise to sentencing disparities among similarly situated sex offenders. We conclude, for the reasons set forth in *People v. Smith, supra,* 29 P.3d at 349–50, that defendant lacks standing to make such a challenge premised on a hypothetical assertion that such disparities may occur.

## III. Maximum Length of Indeterminate Sentence

Defendant next contends the trial court did not properly exercise its sentencing discretion because, under § 16–13–804(1)(b), it had authority to impose an indeterminate sentence with a maximum length less than defendant's "natural life." Defendant bases this argument on §§ 16–11–309(1)(c) and 18–1–105(9)(e.5), both of which provide that the court may impose an indeterminate sentence "up to" the defendant's natural life. We are not persuaded.

Resolution of this issue requires us to consider various rules of statutory construction. Our task in construing a statute is to ascertain and give effect to the intent of the General Assembly. To determine that intent, we look first to the plain and ordinary meaning of the statutory language. *People v. District Court,* 713 P.2d 918 (Colo.1986).

When the language is clear and unambiguous, the statute must be construed as written, without resort to interpretive rules of statutory construction. *People v. Zapotocky,* 869 P.2d 1234 (Colo.1994).

However, if the statutory language lends itself to alternative constructions, and its intended scope is unclear, a court may apply other rules of statutory construction to determine which alternative construction is in accordance with the objectives sought to be achieved by the legislation. *People v. Terry,* 791 P.2d 374 (Colo.1990).

If the statutory language does not unambiguously establish the General Assembly's intent, we may also consider the consequences of a given construction of the statute and the end to be achieved by the statute. *Martin v. People,* 27 P.3d 846 (Colo. 2001). In addition, we must read and consider the statutory scheme as a whole to give consistent, harmonious, and sensible effect to all its parts. *People v. Cooper,* 27 P.3d 348 (Colo.2001).

Statutes should be interpreted, if possible, to harmonize and give meaning to other potentially conflicting statutes. *People v. Martinez,* 844 P.2d 1203, 1205 (Colo.App. 1992). If statutes conflict irreconcilably, we consider special rules of statutory construction to determine which statute will prevail. *See* §§ 2–4–204 to 2–4–207, C.R.S.2001. Under § 2–4–205, if a general statute conflicts with a specific statute, the more specific prevails, unless the general statute is the later adoption and the manifest intent is that the general provision prevail. *See People v. Cooper, supra.*

Here, we conclude that the two statutes upon which defendant relies, §§ 16–11–309(1)(c) and 18–1–105(9)(e.5), conflict irreconcilably with the statute upon which the People rely, § 16–13–804(1)(b). Applying the rules of statutory construction noted above, we further conclude that § 16–13–804(1)(b) must prevail and that the trial court did not have authority to impose an indeterminate sentence with a maximum length less than defendant's natural life.

Section 16–11–309(1)(c) indicates that if the defendant is convicted of a sex offense constituting a crime of violence, the court is to impose "an indeterminate term of incarceration of at least the midpoint in the presumptive range *up to* a maximum of the person's natural life, as provided in § 16–13–804(1)." (Emphasis added.) Similarly, § 18–1–105(9)(e.5) states that if the defendant is convicted of first degree sexual assault as a class two felony, "the court shall be required to sentence the defendant to an indeterminate sentence of at least the midpoint in the presumptive range for the punishment of that class of felony *up to* the defendant's natural life." (Emphasis added.)

In our view, the words "up to" in these statutes unambiguously mean that a trial court has discretion to impose an indeterminate sentence with a maximum length that is less than the defendant's natural life.

However, § 16–13–804(1)(b) requires the court to impose an "indeterminate term of at least the midpoint of the presumptive range for the level of offense committed and a maximum of the sex offender's natural life." Under the plain language of this section, a trial court has no discretion to impose an indeterminate sentence with a maximum length other than the defendant's natural life.

Thus, § 16–13–804(1)(b) appears to conflict irreconcilably with §§ 16–11–309(1)(c) and 18–1–105(9)(e.5).

Here, we may not employ the rule of statutory construction providing that the later adopted conflicting statute prevails because all three of the statutory sections at issue were enacted in 1998 as part of the same bill. Colo. Sess. Laws 1998, ch. 303, § 16–13–804(1)(b) at 1280, § 18–1–105(9)(e.5) at 1290, § 16–11–309(1)(c) at 1291.

Nonetheless, we may consider the rule of statutory construction that a more specific provision prevails over a more general one. As in *People v. Cooper, supra,* and *Martin v. People, supra,* we must carefully determine which provisions are general and which are specific, to give full and sensible effect to the entire statutory scheme.

Classifying the three statutes at issue as specific or general is not susceptible of ready analysis. Nevertheless, we conclude that § 16–13–804(1)(b) is a specific provision, because it refers to sex offenses that constitute crimes of violence. In contrast, while § 16–11–309(1)(c) refers specifically to sex offenses and crimes of violence, it is contained within the general statute relating to mandatory sentences for violent crimes. Similarly, while § 18–1–105(9)(e.5) refers specifically to sexual assaults in the first degree, it is contained within the general statute describing sentencing ranges for all felonies. Thus, we view § 16–13–804(1)(b) as the most specific of the three statutes.

We are further aided in our interpretation by the language of § 16–11–309(1)(c). Even though that statute uses the phrase "up to" in describing the upper end of the presumptive range of a defendant's sentence, it then contains the limiting phrase, "as provided in § 16–13–804(1)," which, as we have noted, is the statute that does not contain the phrase "up to." Thus, this language suggests that § 16–13–804(1) controls as between the two statutes.

Our conclusion is further supported by consideration of the consequences of applying defendant's proposed statutory interpretation. Under defendant's analysis, a trial court could sentence a defendant convicted of sexual assault under § 18–3–402 to a maximum term of less than the defendant's natural life, for example, twenty-five years. In contrast, another defendant convicted of a less serious sex offense, such as enticement of a child under § 18–3–305, C.R.S.2001, would be required to receive an indeterminate sentence whose upper end was that defendant's natural life. Because we presume that the General Assembly intended a just result, we reject defendant's proposed interpretation as illogical.

 Finally, because we have been able to discern the intent of the General Assembly, we need not apply the rule of lenity in favor of defendant. *See People v. Sorrendino,* 37 P.3d 501, 503–04 (Colo.App.2001)(rule of lenity only applies when a statute is susceptible of more than one reasonable interpretation and a court is unable to discern controlling legislative intent after having employed rules of statutory construction).

Based on the foregoing, we conclude that the trial court was required to impose an indeterminate sentence with a maximum term equal to defendant's natural life.

IV. Sentences as Abuse of Discretion

 Finally, defendant argues that the trial court abused its discretion by imposing consecutive DOC sentences of twelve years and forty-eight years to life. We disagree.

The trial court concluded that a lengthy minimum period of imprisonment was required because defendant was on probation for two prior felony convictions when he committed these heinous offenses that had a

devastating impact on the victim. Contrary to defendant's claim, our review of the record indicates that the trial court considered all relevant sentencing factors, including defendant's age, his rehabilitative potential, and his criminal history. Accordingly, we conclude the trial court acted within its discretion. *See People v. Smith, supra,* 29 P.3d at 350.

The sentences are affirmed.

Judge MARQUEZ and Judge VOGT concur.