The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Delbert LARSON, Defendant–Appellant.

No. 01CA1052.

Colorado Court of Appeals, Div. IV.

Feb. 12, 2004.

Certiorari Denied Sept. 7, 2004.*

* Justice COATS does not particiapte.

   Justice BENDER would grant as to the following issue:

Whether the trial court erred in admitting prior bad acts evidence.

Ken Salazar, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Anne Stockham, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge LOEB.

Defendant, Delbert Larson, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault upon a child and enticing a child. Defendant also appeals his sentences. We affirm.

The victim, who was almost five years old, was in the front yard of his house with his seven-year-old sister, when defendant rode by on his bicycle and stopped in front of them. The victim then came inside and told his mother, "I showed him my penis and he showed me his." The victim told his parents that on a previous occasion, the man had offered him some candy and lured him into an alley where he touched the victim's penis and unzipped his own pants and exposed himself.

Twenty days later, defendant rode his bicycle past the victim's house again, and the victim's sister identified him to her father. The victim's father apprehended defendant, and the victim was brought to the scene, where he identified defendant as the man who had molested him. Defendant was then arrested.

Two months after defendant's arrest, while defendant was in custody, he was evicted from his apartment. A deputy sheriff and the resident manager placed all of defendant's belongings on the street. An investigator from the prosecutor's office was present during the eviction. The manager showed the investigator an autobiography written by defendant, and the investigator recovered the document. Defendant had written the autobiography during a sex offender treatment program he underwent while incarcerated in another state for a prior sexual offense.

The prosecution filed a notice of intent to introduce evidence of defendant's prior child molestations in the form of testimony by prior victims, pursuant to § 16–10–301, C.R.S.2003, and CRE 404(b). Defendant also filed a motion to suppress the autobiography. The court held a pretrial hearing on both issues and ruled that all the evidence was admissible.

The jury convicted defendant, and the trial court imposed an indeterminate sentence of fifty years to defendant's natural life for each conviction, to be served consecutively.

I.

Defendant contends that the court erred in admitting evidence of his prior acts of sexual molestation. We disagree.

At trial, four witnesses testified that they were each molested by defendant when they

were children. Subject to objections, defendant stipulated at trial that he had indeed committed sexual assaults against the four witnesses.

The first witness testified that in 1973, when he was about seven years old, defendant approached him in a park and gave him a quarter. The witness went behind a structure and urinated. Defendant then grabbed him, fondled him, and performed fellatio on him. The witness testified that defendant pleaded guilty to the charges arising from the incident.

The second witness testified that in 1967, when he was eight years old, defendant, who was twelve at the time, forcefully removed the witness's clothes and fondled him.

The third witness testified that in 1972, when he was six years old, defendant asked him to go to a secluded place where defendant pulled down the witness's pants and fondled him.

The fourth witness testified that in 1973, when he was six years old, a man lured him into a wooded area where the man performed fellatio on the witness and made the witness perform fellatio on him. Although the witness did not identify defendant on direct examination, the prosecution indicated that defendant pleaded guilty to those acts.

Before any of the witnesses testified, the trial court gave a detailed instruction to the jury, which included, inter alia, the following admonition:

> This evidence is offered for the limited purpose of showing identification and mode of operation, and it is offered for no other purpose.... You shall not use this evidence to conclude that [defendant] had a propensity to commit this type of act. [Defendant] is charged with offenses against [the victim] and he is entitled to be tried on those offenses only.... You certainly could not and should not make any negative inference about him with respect to this case merely because of the fact that there's going to be evidence that there were other acts that were committed.... I want to caution the jury that it does not mean that if you presume that he committed some act before that he committed this

act. That has to be independently proved by the prosecution.

The trial court gave a similar instruction again before each of the four witnesses testified.

A trial court is granted substantial discretion to decide questions concerning the admissibility of evidence, including similar transaction evidence. *People v. Apodaca,* 58 P.3d 1126, 1128–29 (Colo.App.2002).

In § 16–10–301, the General Assembly has expressed a policy judgment that similar transaction evidence should be more readily available in sexual assault cases. Consequently, absent a showing that the court has clearly abused its discretion, we must affirm its evidentiary ruling. *People v. Duncan,* 33 P.3d 1180, 1183 (Colo.App.2001).

In a case involving a sexual assault upon a child, evidence of prior similar acts committed by the defendant may be admissible pursuant to § 16–10–301 and CRE 404(b) when offered to show motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident. *People v. Apodaca, supra,* 58 P.3d at 1128–29.

For prior acts evidence to be admissible: (1) it must relate to a material fact; (2) it must be logically relevant in that it makes the existence of a material fact more or less probable than it would be without the evidence; (3) its logical relevance must be independent of the prohibited inference that the defendant has a bad character; and (4) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *See People v. Rath,* 44 P.3d 1033 (Colo.2002); *People v. Spoto,* 795 P.2d 1314, 1320 (Colo.1990).

In reviewing the admission of prior acts evidence, we must assume the maximum probative value a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected from its introduction. *People v. Nuanez,* 973 P.2d 1260, 1263 (Colo.1999); *People v. Apodaca, supra,* 58 P.3d at 1129.

Here, in determining the admissibility of the prior acts, the trial court made detailed

factual findings. The trial court found that the other acts were offered to show identity, modus operandi, and intent. The court delineated the similarities between the prior acts and the charged acts, which included that the children were of approximately the same age, the children were strangers, similar sex acts were performed by defendant and required of the children, and defendant had a predilection to return to the scene. Notwithstanding the temporal remoteness of the prior acts, the court found that these similarities rendered the prior acts relevant to the issues of identity and mode of operation. *See Adrian v. People,* 770 P.2d 1243 (Colo.1989)(trial court did not abuse discretion in admitting evidence of prior sexual assaults where remoteness was outweighed by similarity the incidents); *People v. Groves,* 854 P.2d 1310, 1314 (Colo.App.1992) (remoteness of similar transaction evidence less significant where, as here, defendant had been incarcerated during most of the intervening years).

The court also found the prior acts relevant for the purpose of showing intent, in other words, to show that the encounters with the children were not innocent, but were for the purposes of making sexual contact or grooming victims.

The court acknowledged that the prior acts were prejudicial to defendant's case, but found that they were not unfairly prejudicial when admitted with a proper jury instruction. *See People v. Duncan, supra,* 33 P.3d at 1184. The court specifically addressed and applied each factor listed in *People v. Spoto, supra.*

We conclude that the trial court did not abuse its discretion in making its findings and admitting this evidence. The testimony by the four witnesses was logically relevant to defendant's identity and intent, apart from any inference of propensity. *See* § 16-10-301. Moreover, we agree with the trial court that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The court also gave a detailed instruction to the jury multiple times that articulated the proper use of the evidence. *See Douglas v. People,* 969 P.2d 1201, 1206 n. 6 (Colo.1998)(reviewing court should accord greater deference to trial court ruling admitting evidence of multiple similar acts); *People v. Duncan, supra* (trial court did not abuse discretion in admitting testimony of four men that they had each been sexually assaulted by defendant when they were minors).

## II.

■ Defendant also contends that the court erred in admitting excerpts from his autobiography. Defendant contends that the excerpts constitute inadmissible prior acts evidence. Defendant also contends that the court should have suppressed the autobiography because it was improperly seized in violation of his Fourth Amendment rights, constituted self-incriminating testimony in violation of his Fifth Amendment rights, constituted involuntary statements in violation of his due process rights, and violated his statutory psychologist-client privilege. We need not reach the substance of defendant's arguments because we conclude that even if the court erred in admitting the excerpts, any such error was harmless beyond a reasonable doubt.

The excerpts consisted of two pages: one with a single paragraph, wherein defendant described his typical method of luring and molesting children, and another with a single line describing how he would cruise for victims on his bicycle.

The trial court found the excerpts admissible as prior acts evidence relevant to modus operandi and intent. The court also rejected defendant's constitutional arguments for excluding the excerpts.

■ For non-constitutional evidentiary errors, the proper inquiry in determining whether an error is harmless is not whether there was sufficient evidence to support the verdict without the improperly admitted evidence. Rather, if a reviewing court can say with fair assurance that, in light of the entire record, the error did not substantially influence the verdict or impair the fairness of the trial, the error may properly be deemed harmless. *Masters v. People,* 58 P.3d 979, 1003 (Colo.2002).

A constitutional error is harmless when the evidence properly received is so overwhelming that such error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *People v. Harris*, 43 P.3d 221, 230 (Colo.2002); *People v. Perry*, 68 P.3d 472 (Colo.App.2002). The People bear the burden of proving that the error was harmless beyond a reasonable doubt. If there is a reasonable probability that the defendant could have been prejudiced by the error, the error cannot be harmless. *People v. Harris, supra*.

In determining whether a constitutional error was harmless, we examine the importance of the evidence to the prosecution's case, the overall strength of the prosecution's case, the cumulative nature of the evidence, and the presence or absence of corroborating or contradictory evidence. *Blecha v. People*, 962 P.2d 931, 943 (Colo. 1998). The ultimate question we must decide is whether the guilty verdict rendered in this trial was surely not attributable to the error. *See People v. Harris, supra; People v. Martinez*, 83 P.3d 1174, 2003 WL 22019804 (Colo. App. No. 02CA0366, Aug. 28, 2003).

Here, we conclude that under the standard for either constitutional or non-constitutional error, any error in admitting the excerpts was harmless.

The jury heard testimony from four witnesses who had been previously molested by defendant, and those witnesses detailed the molestations, including defendant's grooming of the victims, the types of sex acts that occurred, and defendant's pattern of returning to the scene. Defendant pleaded guilty to some of these charges and, at trial here, stipulated that he committed each of the prior offenses.

The autobiography excerpts were brief, general descriptions of defendant's mode of operation and typical sex assaults against children and were therefore cumulative of the other prior acts evidence discussed above. Defendant did not dispute that he had previously sexually assaulted children. *See People v. Denton*, 91 P.3d 388, 2003 WL 21939669 (Colo.App. No. 01CA2344, Aug. 14, 2003)(error harmless where evidence described a previous offense and jury was already aware of previous offenses).

Moreover, the prosecution's case was extremely strong. Here, the victim directly identified defendant as the perpetrator, the circumstances of the previous and present assaults were highly similar, and there was no evidence contradicting the identification of defendant as the perpetrator. *See Blecha v. People, supra; People v. Perry, supra*. Under these circumstances, the evidence of guilt was overwhelming, and any constitutional error in admitting the autobiography excerpts was harmless beyond a reasonable doubt. Accordingly, any non-constitutional evidentiary error in admitting the excerpts was also harmless.

## III.

Defendant contends that the trial court erred in imposing two consecutive indeterminate sentences of fifty years to life, under the Colorado Sex Offender Lifetime Supervision Act, § 18–1.3–1004, C.R.S.2003 (formerly codified at § 16–13–804)(the Act). Specifically, defendant contends that the court illegally imposed the fifty-year minimum term because that term is longer than the maximum of the presumptive range for both fourth degree and third degree felonies. We disagree.

Under the plain language of the Act, a sex offender must be sentenced to "an indeterminate term of at least the minimum of the presumptive range ... and a maximum of the sex offender's natural life." Section 18–1.3–1004(1)(a), C.R.S.2003. The language "at least" in this section has been interpreted to allow a court to set a minimum term longer than the minimum of the presumptive range. *See People v. Becker*, 55 P.3d 246 (Colo.App. 2002)(for first degree sexual assault, affirming an indeterminate sentence of forty-eight years to defendant's natural life); *People v. Smith*, 29 P.3d 347 (Colo.App.2001)(for sexual assault on a child, affirming an indeterminate sentence of ten years to life under the Act).

Defendant was convicted of sexual assault on a child, in violation of § 18–3–405(1)–(2), C.R.S.2003, a class four felony. The presumptive range of imprisonment for a class

252

four felony is two to six years. Section 18–1.3–401(1)(a)(V)(A), C.R.S.2003.

Defendant was also convicted of enticement of a child in violation of § 18–3–305(1), C.R.S.2003, a class three felony here due to defendant's prior sexual assaults against children. See § 18–3–305(2), C.R.S.2003. The presumptive range of imprisonment for a class three felony is four to twelve years. Section 18–1.3–401(1)(a)(V)(A).

Defendant contends that the maximum presumptive penalties in § 18–1.3–401 provide a maximum limit on the court's discretion in imposing a minimum term under § 18–1.3–1004 of the Act. We are not persuaded.

Under the Act, a trial court has discretion to impose a minimum sentence greater than the minimum designated in the presumptive range. See People v. Smith, supra; People v. Becker, supra. In both Smith and Becker, the minimum term imposed by the court also exceeded the maximum of the presumptive range, and divisions of this court upheld the sentences in those cases. However, although the issue presented in Becker was whether the sentencing court may "deviate from the minimum and maximum boundaries set by the statute," the divisions' holdings in Becker and Smith only addressed whether the court could impose an indeterminate sentence with a minimum term greater than the minimum of the presumptive range. Thus, the specific issue presented here was not directly addressed in the holdings in those cases. We further disagree with defendant that People v. Mata, 56 P.3d 1169 (Colo.App.2002), resolved this issue. The minimum terms imposed by the trial court in People v. Mata fell within the presumptive ranges set in § 18–1.3–401. Thus, the division in People v. Mata also did not address the specific issue presented here.

We conclude that the Act grants the court discretion to impose an indeterminate sentence with a minimum term that exceeds the maximum of the presumptive range set forth in § 18–1.3–401.

The Act creates specific sentencing provisions for a specific type of felony—sexual offenses—whereas the general sentencing provisions in § 18–1.3–401 create presumptive ranges that apply to general classes of felonies. The sentencing provisions of the Act therefore supplant the presumptive ranges in § 18–1.3–401, and the appropriate sentence for a sex offense is determined by the Act rather than by the general sentencing statute. See People v. Cooper, 27 P.3d 348 (Colo.2001); People v. Becker, supra, 55 P.3d at 250–51 (a more specific provision prevails over general).

The Act specifically designates the shortest possible minimum term, but nothing in the Act creates a maximum limit on the minimum term. Thus, although the court must derive the minimum of the indeterminate sentence by looking to the presumptive ranges in § 18–1.3–401, the presumptive ranges do not create a cap on the possible minimum term.

Accordingly, because the Act grants the court discretion to set the minimum term of the indeterminate sentence, see People v. Smith, supra; People v. Becker, supra the court has discretion to designate a minimum term that is greater than the maximum presumptive penalty. To conclude otherwise would be to read a provision into the Act that does not exist.

Judgment and sentences affirmed.

Judge CASEBOLT and Judge GRAHAM concur.